**PEOPLE OF THE STATE OF ILLINOIS, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

No. 81–1317.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 13, 1987.

Decided Oct. 30, 1987.

Matthew J. Dunn, Asst. Atty. Gen. for the State of Ill., of the Bar of the Supreme Court of Ill., pro hac vice by special leave of Court, for petitioner. Tyrone C. Fahner, Atty. Gen. (at the time the brief was filed), Roma J. Stewart, Sol. Gen., William J. Barzano, Jr., Asst. Atty. Gen. and Alvin Liebling, Sp. Asst. Atty. Gen., State of Ill. were on the brief, for petitioner. Reed Neuman, Asst. Atty. Gen., State of Ill. also entered an appearance for petitioner.

Brian V. Faller, Atty., Dept. of Justice, for respondent. Carol E. Dinkins, Asst. Atty. Gen., Donald W. Stever, Jr., Jose R. Allen, Lawrence R. Liebesman, Attys., Dept. of Justice and Frances M. Recio, Atty., F.A.A. were on the brief, for respondent.

Before: ROBINSON, RUTH B. GINSBURG, and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This is a petition for review challenging a final rule promulgated by the Federal Aviation Administration under the Noise Control Act of 1972. The State of Illinois maintains that the FAA violated applicable statutory requirements by failing to provide a detailed explanation for its decision not to require all certificated airport operators to submit aircraft noise abatement plans to the agency. For the reasons that follow, we conclude that the State's contention is without merit and therefore deny the petition.

I

This case has roots reaching back to 1976. In October of that year, the Environmental Protection Agency, as mandated by the Noise Control Act of 1972, 49 U.S.C. § 1431 (1982) ("the 1972 Act"), submitted to the FAA proposed regulations to provide for "control and abatement of aircraft noise and sonic boom." § 1431(c)(1). EPA's proposal required certificated airport operators to submit noise abatement plans to the FAA for approval. The EPA-proposed regulations also specified uniform procedures for development, approval, and implementation of the noise abatement plans, including a standardized methodology, dubbed the "Airport Noise Evaluation Process" (ANEP), for measuring the incremental impact of aircraft noise.

In early 1977, as required by the 1972 Act, a hearing was conducted before an EPA-FAA panel on EPA's proposal. After this energetic beginning, however, it was not until January 1981, in the wake of Congress' passage of the Aviation Safety and Noise Abatement Act of 1979 ("ASNA"), 49 U.S.C. § 2101 (1982) et seq., that the FAA finally promulgated an interim rule which was made immediately effective. Less than two months later, the State of Illinois filed a petition for review in this court, challenging first, the FAA's failure to abide by notice-and-comment procedures under the Administrative Procedure Act, 5 U.S.C. § 553 (1982), in issuing the interim rule; and second, the adequacy of the FAA's explanation of its response to EPA's proposal tendered five years previously.

This court heard argument on Illinois' challenge in November 1981. Promptly thereafter, the court issued an order deferring consideration of the petition until completion of the then-ongoing rulemaking proceedings before the FAA. Indeed, at the very time the State's appeal was being briefed and argued, the FAA was receiving comments on the interim rule in the course of an extended comment period, which drew to a close on New Year's Eve 1981. During that period, twenty comments were filed with the FAA, including those of the

Attorney General of the State of Illinois. In its comments, the State took the position that the FAA was statutorily required to embrace the mandatory nature of EPA's 1976 proposal. That is to say, in the State's view, all certificated airport operators would be obliged to submit to the FAA a proposed noise abatement plan or, at a minimum, to conduct an EPA-designated screening test to determine the seriousness (or lack thereof) of a noise problem surrounding airport facilities.

The State's view did not, however, prevail at the agency. In its final rule, issued at long last in December 1984 in obedience to a directive from this court, the FAA adhered to its position, as stated in the interim rule, that the mandatory nature of EPA's proposal "would be burdensome and unnecessary," 49 Fed.Reg. 49,263 (1984), and that "the ASNA Act requires that the process be voluntary." *Id.*

As the case now reaches us, the FAA contends, and the State of Illinois agrees, that the latter's procedural challenge under the APA has been rendered moot by the FAA's promulgation of the final rule.

## II

■ The precise issue remaining before us is whether the FAA was under a statutory duty to provide a detailed explanation because, as the State sees it, the FAA did "not prescrib[e] *any* regulation in response to EPA's submission of proposed regulations." 49 U.S.C. § 1431(c)(1)(B) (emphasis added). Briefly stated, the State takes the position that, by failing to embrace EPA's proposed mandatory regime and by failing to adopt the ANEP methodology, the FAA so eviscerated EPA's proposed regulations that it in effect prescribed no regulation at all. Under the 1972 Act, a decision not to issue "any regulation" in response to an EPA proposal requires the FAA to publish "a detailed explanation providing reasons for the decision ... and a detailed analysis of and response to all documentation or other information submitted by the Environmental Protection Agency...." *Id.* This, the State complains, the FAA failed to do.

This argument, with all respect, badly misses the mark. It is clear beyond cavil that the FAA has promulgated an elaborate set of regulations, duly codified in Part 150 of Volume 14 of the Code of Federal Regulations. This set of regulations stands in sharp rebuke to Illinois' strained assertion that no regulations were prescribed at all. As if more were needed than the regulations themselves, a number of airport operators, such as those at Los Angeles International Airport and San Francisco International Airport, have submitted noise compatibility programs pursuant to the FAA's regulations and have duly received FAA approval. Still other airports have submitted noise compatibility programs or noise exposure maps, but have apparently yet to receive agency approbation. Since it is manifest that the FAA *did* prescribe regulations (which are in fact producing tangible results) in response to EPA's proposal, the "detailed explanation" requirement contained in the 1972 Act was never triggered in the first instance.

■ At oral argument, counsel for Illinois emphasized a somewhat different point, arguing that in issuing the final rule the FAA erred in construing its statutory obligations under the 1972 Act by believing itself constrained by ASNA to reject EPA's proposed mandatory approach. This position sounds, upon analysis, more in the nature of a substantive attack under the APA to the effect that the FAA's rule reflects an interpretation that is "contrary to law." We are persuaded, however, that Illinois has overread the FAA's explanation. Fairly read, the FAA's statement sets forth a *variety* of reasons for adopting a voluntary regime. These reasons included concern over imposing an "unnecessary cost burden on those airports with no present or anticipated noise problem," 46 Fed.Reg. 8,328 (1981), and concern that the airport certification program would not be "the proper vehicle for implementation of an airport noise abatement planning program." 46 Fed.Reg. 8,329 (1981). In reaching this conclusion, the FAA drew on a number of comments, including those of Illinois' own Department of Transportation,

which urged the FAA to continue the voluntary regime articulated in the agency's interim rule.

Even granting Illinois its point, the argument still falls short. To be "contrary to law," the FAA's rule must embody an interpretation that is at war with Congress' intent. *See I.N.S. v. Cardoza–Fonseca,* —— U.S. ——, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Chevron U.S.A. v. Natural Resources Defense Counsel,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But we can discern here no such infidelity to Congressional intent. The 1972 Act in no manner requires the FAA to adopt EPA's proposal, let alone to adopt regulations embracing a mandatory regime. This more flexible (and more natural) reading of the statute is reinforced by Congress' subsequent action in this arena; the Congressional approach evidenced in ASNA in 1979 was to encourage airport operators to adopt noise abatement plans on a voluntary basis by providing federal grants-in-aid as an incentive.

Finally, even were Congress' intent on this precise point unclear, we are duty bound under settled principles to defer to a reasonable interpretation of a statute by the agency charged with administering it. *Cardoza–Fonseca, supra,* 107 S.Ct. at 1221–22; *Chevron, supra,* 467 U.S. at 842–45, 104 S.Ct. at 2781–83. Here, in light of the language, structure, and purpose of the 1972 Act, we cannot but conclude that the FAA's interpretation is eminently reasonable. *See Rettig v. Pension Benefit Guaranty Corporation,* 744 F.2d 133, 150–52 (D.C.Cir.1985).

*Denied.*