**LIN, Qu–Zhuo, Plaintiff,**

v.

**Doris MEISSNER, Defendant.**

### Civ. A. No. 93–2172.

United States District Court,
District of Columbia,
Civil Division.

June 14, 1994.

Mark Anthony Mancini, Wasserman, Mancini & Chang, Washington, DC, for plaintiff.

Suzanne Clair Nyland, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Pending before the Court are the parties' cross-motions for summary judgment. There are no material facts in dispute.[1] Upon consideration of the arguments and authorities presented by the parties in their briefs and during the May 26, 1994 hearing, and for the reasons that follow, the Court grants defendant's motion for summary judgment and dismisses this case with prejudice.

### I. Background

Plaintiff is a Peoples Republic of China ("PRC") national who entered the United States in October, 1987, after illegally crossing the Mexican border into California.[2] On June 5, 1990, the INS issued a Form I–210 order requiring plaintiff "to depart from the United States ... on or before January 1, 1994." Subsequently, however, the Attorney General granted plaintiff "deferred enforced departure" pursuant to Executive Order 12711 ("E.O. 12711"). E.O. 12711 was issued

---

1. Plaintiff failed to file a statement of facts in support of his motion for summary judgment but has adopted those set forth in defendant's statement of material facts of which there is no genuine dispute.

2. Plaintiff's motion for summary judgment and plaintiff's Application to Register Permanent Residence of Adjustment Status suggest that plaintiff entered the United States in 1989, immediately

following the Tiananmen Square incident. However, four separate documents in the record—three applications for employment and one INS record of a deportable alien—indicate that plaintiff entered the United States by crossing the Mexican border in 1987. In his reply brief and during oral argument, plaintiff admitted that he did in fact enter the United States by crossing the Mexican border in 1987.

by President Bush on April 11, 1990, following the Tiananmen Square incident. Among other things, this Order directed the Attorney General to defer "enforced departure" proceedings until January 1, 1994, for all PRC nationals who were in the United States on or before June 5, 1989, up to and including April 11, 1990. The Order also directed the Attorney General "to facilitate travel [by PRC nationals] across borders of other nations and reentry in the United States in the same status such PRC nationals had on departure."

On August 9, 1993, plaintiff filed an application for Advance Parole (From I–131) to allow him to return to the United States after a two-month trip to the PRC which began on July 20, 1993. To support his application, plaintiff attached a telegram, dated July 28, 1993, which stated that his mother was seriously ill. On August 11, 1993, INS District Director William J. Carroll denied plaintiff's application for advance parole, stating, "[b]ased on ... review [of plaintiff's case] it has been determined that a favorable exercise of discretion [as provided in INS regulation, 8 C.F.R. § 212.5] in this matter is not warranted." The parole regulations at 8 C.F.R. § 212.5 give the district director discretion in deciding whether to grant an application for advance parole. Section 212.5(b) provides that parole may not be granted to an alien who requests it "for the sole purpose of seeking adjustment of status under section 245a of the Act." 8 C.F.R. § 212.5.

On September 21, 1993, plaintiff filed an Application to Register Permanent Residence of Adjustment Status (Form I–485). On October 7, 1993, Thomas Cook, Acting Director of INS Eastern Service Center denied plaintiff's application. The denial letter states that the CSPA "does not give [plaintiff] a lawful status in the United States" because plaintiff was not inspected, admitted or paroled when he entered the United States. Admin.Rec. at 3. The letter further states, "[e]ntering the United States without

inspection renders [plaintiff] ineligible for adjustment under Section 245 of the [Immigration and Nationality] Act ('INA')." *Id.* at 4.

## II. *Discussion*

This case, one of first impression under the Chinese Student Protection Act ("CSPA"), Pub.L. No. 102–404, 106 Stat.1969, presents two main issues: (1) does the CSPA allow PRC nationals who enter the United States without inspection to adjust their status, and (2) does INS's August 13, 1993 Cable No. 5 constitute an invalid agency rule.

## A. Does the CSPA cover PRC nationals who enter the United States without inspection?

■ Plaintiff claims he should benefit from the protections of the CSPA because he satisfies all three of the Act's requirements: (1) he is an alien who is a national of the PRC described in Executive Order 12711;[3] (2) he has resided continuously in the United States since April 11, 1990, except for brief casual absences; (3) he was not physically present in the PRC for longer than ninety days after June 1989 and before the date of enactment of the CSPA. Plaintiff argues that because E.O. 12711 applied to PRC nationals who entered the United States with inspection *and* PRC nationals who entered without inspection, the CSPA must confer adjustability on both classes of PRC nationals.

Defendant argues that the plain language of the CSPA indicates that the Act does not apply to *all* PRC nationals who seek permanent residency in the United States. Rather, the Act applies only to those PRC nationals who apply for adjustment of status under § 245 of the INA. According to defendant, an alien applying for adjustment of status must first be inspected and admitted or paroled into the United States *before* the alien has a legal status that can be adjusted under the CSPA (in the case of PRC nationals) or under the INA (in the case of other nationals).[4]

---

3. E.O. 12711 covers "all nationals of the PRC and their dependents who were in the U.S. on or after June 3, 1989, up to and including the date of this Order (April 11, 1990)."

4. The INA adjustment of status provisions "permit the Attorney General to exercise discretion to adjust the status of an alien who is inspected and admitted to the United States ... to that of an alien who is inspected and admitted or paroled

Section 2 of the CSPA expressly waives § 245(c) of the INA. Section 2 of the CSPA provides:

> Sec. 2. **Adjustment to lawful permanent resident status of certain nationals of the People's Republic of China.**
>
> (a) In general— ... [w]henever an alien described in subsection (b) applies for adjustment of status under section 245 of the Immigration and Nationality Act during the application period (as defined in subsection (e)) the following rules shall apply with respect to such adjustment: ... (5) Section 245(c) of such Act shall not apply.

8 U.S.C. § 1255 (note). Section 245(c) of the INA prohibits adjustment of status for an alien who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed to maintain continuously a lawful status since entry into the United States. However, the CSPA does not expressly waive § 245(a) of the INA. Section 245(a) requires an alien to be inspected and admitted or paroled into the United States in order to be eligible for an adjustment of status.

INS interim rule, 8 C.F.R. § 245.9(b)(6),[5] which plaintiff also challenges, supports defendant's interpretation of the CSPA. Section 245.9(b)(6) provides that in order to be eligible for an adjustment of status under the CSPA, a PRC national must establish eligibility for adjustment of status under all provisions of § 245 of the INA, unless the basis for ineligibility has been expressly waived.

Plaintiff argues that 8 C.F.R. § 245.9(b)(6) contradicts the plain language, spirit and Congressional intent behind the CSPA. Plaintiff claims that if Congress had intended to limit the number of PRC nationals eligible for the protection under the CSPA by imposing an inspection and admission requirement, it would have expressly referred to the INA's adjustment requirements. Instead, plaintiff notes, Congress chose to refer to the more expansive definition of eligibility contained in E.O. 12711. Plaintiff claims that in enacting the CSPA, Congress simply meant to pre-

serve the lawful nonimmigrant status of PRC nationals covered by § 3(b) of E.O. 12711. Section 3(b) provides:

> (b) Maintenance of lawful status for purposes of adjustment of status or change of nonimmigrant status for such PRC nationals *who were in lawful status* at any time on or after June 5, 1989, up to and including the date of this entry.

(emphasis added). Since the INS has never disputed that E.O. 12711 covered persons who entered with and without inspection, plaintiff argues that the INS cannot now dispute that the CSPS, which was merely designed to replace E.O. 12711, confers adjustability on both classes of PRC nationals. Plaintiff further argues that the CSPA represents an exhaustive list of permanency residency requirements for PRC nationals, and because § 245(a) is not included on that list, its requirements do not apply to PRC nationals.

The Court interprets neither E.O. 12711 or the CSPA as waiving the basic INA requirement that a PRC national must enter the United States legally in order to effect a change in immigration status. President Bush authorized E.O. 12711 as an interim measure to maintain the status quo of PRC nationals who were located in the United States around the time of the Tiananmen Square incident; the Order did not operate to grant legal immigration status to PRC nationals who did not have such status in the first place. The CSPA is the statutory framework by which PRC nationals may change their immigration status. The Court cannot accept plaintiff's position that in enacting the CSPA, Congress intended to set aside § 245 of the INA in its entirety with respect to all PRC nationals, regardless of their mode of initial entry into the United States. Congress expressly exempted § 245(c) of the INA from the CSPA. Had Congress intended the CSPA's list of requirements to be exhaustive, this action would have been superfluous. By expressly omitting § 245(c) and not § 245(a) from the INA, the Court concludes that Congress in-

---

to the United States ... to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a).

5. July 1, 1993 INS Interim Rule, 8 C.F.R. § 245.-9(b)(6) (58 Fed.Reg. 35,832).

**8**

tended to limit the class of PRC nationals covered by the CSPA. *See United States v. Herbert Bryant, Inc.*, 543 F.2d 299, 307 (D.D.C.1976) (discussing principle of statutory construction that "all words in a statute are to be assigned a meaning and nothing therein is to be construed as duplicative or surplusage"); *United Steel Workers of America, Inc. v. Marshall*, 647 F.2d 1189, 1232 (D.C.Cir.1980), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981).

To the extent that Congress' intent to limit the CSPA to certain PRC nationals is unclear, the Court defers to the INS' reasonable interpretation of the CSPA, contained in 8 C.F.R. § 245.9(b)(6). *See NLRB Union v. Federal Labor Relations Authority*, 834 F.2d 191, 198–99 (D.C.Cir.1987); *Illinois v. FAA*, 832 F.2d 168, 171 (D.C.Cir.1987). In the Court's view, 8 C.F.R. § 245.9(b)(6) contradicts neither the plain language nor the legislative history of the CSPA.[6]

**B. Does INS Cable No. 5 constitute an invalid agency rule?**

Plaintiff's second argument is that the INS cable which thwarted his application for advance parole, INS Cable No. 5, constitutes an agency rule, and thus, the INS was required to promulgate it in accordance with the notice and comment procedures contained in the Administrative Procedure Act ("APA"), 5 U.S.C. § 553.

Cable No. 5, issued on August 13, 1993, states that some PRC nationals who entered the United States without inspection and subsequently reentered the United States under grants of advance parole "are now seeking CSPA benefits." The cable also states that E.O. 12711's reference to travel facilitation was not intended to provide legitimate immigration status to those who did not already have such status. The cable directs the INS field offices to process parole requests from PRC nationals who entered the United States without inspection consistent with INS regulations governing advance parole at § 212.5(c), which permits advanced parole to be granted based upon evidence of emergent or humanitarian need.

Defendant claims plaintiff lacks standing to challenge Cable No. 5 because the INS issued Cable No. 5 two days *after* the District Director of INS denied plaintiff's application. *See Lujan v. Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Moreover, defendant asserts that even if plaintiff has standing to challenge Cable No. 5, the APA's notice and comment procedures do not apply because Cable No. 5 merely interprets statutory requirements. *See National Family Planning and Reproductive Health Ass'n v. Sullivan*, 979 F.2d 227 (D.C.Cir.1992). Finally, defendant asserts that Cable No. 5 does not change the advance parole regulations governing plaintiff; rather, it clarifies the INS' previous practice of allowing CSPA nationals who entered without inspection to obtain advanced parole under applicable INS regulations, by demonstrating emergent or humanitarian need, for example. *See* 8 C.F.R. § 212.5(b).

Plaintiff responds that because Cable No. 5 is merely a confirmation of prior INS policy, he has standing. In addition, plaintiff claims that the telegram he submitted with his advance parole request constituted a valid claim of emergent or humanitarian need. Plaintiff contends the District Director's denial of plaintiff's request by form letter "with boilerplate language" and "no reference to plaintiff's mother's illness or humanitarian reasons" represented a shift from INS' previous practice of granting parole requests to PRC nationals for humanitarian reasons.

■■■ The Court questions whether plaintiff has standing to challenge Cable No. 5. In any event, the Court does not consider the cable to be inconsistent with the CSPA, prior INS policy, or subject to the APA's notice

**6.** In addition to various legislative materials, plaintiff has attached a letter from Senator Paul Simon to his motion for summary judgment. *See* Pl's Exh. 3. In this letter, Senator Simon states, "although [Chinese who otherwise qualify for the protections we established against forced return should not be barred because they entered the United States without inspection], I cannot state with certainty that all of my colleagues in the Senate who played leadership roles on this bill would agree. Clearly, cases can and will be made on both sides of this issue." These statements reinforce the Court's conclusion that 8 C.F.R. 245.9(b)(6) does not directly contradict the language or the legislative history of the CSPA.

and comment procedures. The Court defers to the INS District Director's determination that plaintiff failed to submit a supportable claim of emergent or humanitarian need.[7]

### III. *Conclusion*

The Court holds that the INS properly denied plaintiff's request for an adjustment of status under the CSPA because the Court interprets neither the CSPA nor E.O. 12711 as waiving the basic INA requirement that a PRC national must enter the United States legally in order to effect a change in immigration status. The Court further holds that the INS correctly denied plaintiff's application for advanced parole. INS regulations governing advance parole, including Cable No. 5, have consistently barred applications for advance parole made for the sole purpose of seeking an adjustment of immigration status. The Court is deferent to the INS' determination that plaintiff failed to submit a valid claim for emergent or humanitarian need. Plaintiff's failure to obtain relief in this action in no way precludes him (or other similarly situated PRC nationals) from seeking political asylum approval.

Accordingly, for the reasons stated in this Memorandum Opinion, the Court denies plaintiff's motion for summary judgment, grants defendant's cross-motion for summary judgment and dismisses the above-captioned case with prejudice.

SO ORDERED.

---

7. Defendant has noted two facts which appear to undermine plaintiff's claim of emergent need: (1) the telegram plaintiff submitted in support of his application for Advanced Parole was dated July 28, 1993, over one week after his two-month trip to the PRC was scheduled to begin; (2) plaintiff did not file his application until August 9, 1994, thirteen days after receiving the telegram.