Larry Lung **YEUNG**, Plaintiff,

v.

Janet **RENO**, United States Attorney General, Defendant.

No. 93 Civ. 8383 (RLC).

United States District Court, S.D. New York.

Nov. 3, 1994.

<hr />

it found him "statutorily ineligible," (Complaint, Exhibit L), citing Yeung's initial illegal entry into the United States and subsequent return to China, and a lack of evidence of advance parole as causes. *Id.*

Yeung brought an action on December 7, 1993, against defendant Janet Reno, Attorney General of the United States for declaratory and injunctive relief, seeking to have his adjustment request granted. The government argued that Yeung's complaint was not ripe for review because he had not exhausted all available administrative remedies, in particular, renewal of his application in deportation proceedings. As a result, the government argued that the court lacked jurisdiction to hear the case. Yeung moved for summary judgment, and the government cross-moved for the same. Yeung's request for adjustment was subsequently granted by the INS, resulting in plaintiff's and defendant's counsels' stipulating to dismiss the action on June 29, 1994.

Cox & Lin, New York City, for plaintiff; Theodore N. Cox, of counsel.

Mary Jo White, U.S. Atty. for S.D.N.Y., New York City, for defendant; F. James Loprest, Jr., Sp. Asst. U.S. Atty., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

*Preliminary Statement*

Plaintiff Larry Lung Yeung has applied for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412 (1994). Yeung applied for adjustment to lawful permanent resident status under the Chinese Student Protection Act of 1992 ("CSPA"), Pub.L. No. 102–404, § 2, 106 Stat.1969 (Supp.1993), which provides protection against deportation to "certain nationals of the People's Republic of China," ("PRC"). The Immigration and Naturalization Service ("INS") denied Yeung's application because

I.

The EAJA mandates the award of fees to the prevailing party in suits that challenge agency actions "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1994). It is undisputed that Yeung prevailed in his case against the INS. *See Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1082 (2d Cir.1983), *citing* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4990; *see also Correa v. Heckler,* 587 F.Supp. 1216, 1220 (S.D.N.Y.1984) (Ward, J.). The only issues we must address are whether the position of the United States was "substantially justified" and, if it was not, the appropriate amount to award.

The test for determining whether the government's position is substantially justified is "essentially one of reasonableness."[1] H.R.Rep. No. 1418, at 10, *reprinted*

---

1. In reenacting the EAJA, a 1985 House Committee Report sought to make the standard more than reasonableness, H.R.Rep. No. 120, 99th Cong., 1st Sess. 9 (1985), *reprinted in* 1985

U.S.C.C.A.N. 132, 138, but the Court rejected this standard, *Pierce v. Underwood,* 487 U.S. 552, 553, 563–68, 108 S.Ct. 2541, 2543, 2549–52, 101 L.Ed.2d 490 (1988), concluding that the Commit-

*in* 1980 U.S.C.C.A.N. at 4989; *accord Pierce v. Underwood,* 487 U.S. 552, 565 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988); *Federal Election Comm'n v. Political Contributions Data, Inc.,* 995 F.2d 383, 386 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994); *Cohen v. Bowen,* 837 F.2d 582, 585 (2d Cir.1988); *Environmental Defense Fund,* 722 F.2d at 1085. The United States must make a "strong showing" to demonstrate that its position was reasonable, H.R.Rep. No. 1418, at 18, *reprinted in* 1980 U.S.C.C.A.N. at 4989, 4997; *Environmental Defense Fund,* 722 F.2d at 1085; *Boudin v. Thomas,* 732 F.2d 1107, 1110 (2d Cir.1984); *see also Rosado,* 823 F.2d at 42, and the court must examine "the full course of the litigation" when determining the government's reasonableness. *Environmental Defense Fund,* 722 F.2d at 1085.

■ The " 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based...."[2] 28 U.S.C. § 2412(d)(2)(D) (1994); *see also id.* at § 2412(d)(1)(B). Therefore, both the position of the Attorney General and the action of the INS must be evaluated in order to determine whether the government action constituted substantially justifiable behavior. *Political Contributions Data, Inc.,* 995 F.2d at 386.[3]

tee lacked the authority to amend prior Congressional legislation and that "it is the function of the courts and not the Legislature ..., to say what an enacted statute means." *Id.* at 566, 108 S.Ct. at 2551. In addition, "[t]his circuit has repeatedly interpreted the 'substantially justified' standard to be essentially a standard of reasonableness." *Cohen,* 837 F.2d at 586; *accord Rosado v. Bowen,* 823 F.2d 40, 42 (2d Cir.1987).

2. Prior to 1985, the circuits were split over whether the courts could examine only the government's position in the litigation in question or both the government's position in litigation and the underlying agency action in determinations as to substantially justifiable action. *Environmental Defense Fund,* 722 F.2d at 1084–85, 1087 (citing cases). The law of this Circuit was that the courts "look only to the government's position in the litigation ... to determine whether its actions were 'substantially justified.' " *Boudin,* 732 F.2d at 1116; *Callejo v. Heckler,* 613 F.Supp.

## II.

■ The Attorney General's position was substantially justified. The fact that the government settled does not mandate the conclusion that its position was not substantially justified, H.R.Rep. No. 1418, at 11, *reprinted in* 1980 U.S.C.C.A.N. at 4990; *accord Underwood,* 487 U.S. at 568, 108 S.Ct. at 2551; *Environmental Defense Fund,* 722 F.2d at 1085; *Cohen,* 837 F.2d at 582; *Correa,* 587 F.Supp. at 1222; *United States v. Giovanelli,* 1994 WL 416158 (S.D.N.Y. Aug. 5, 1994) (Motley, J.), and that therefore, it must pay attorney's fees under the EAJA, *Callejo,* 613 F.Supp. at 1232 (citing cases). Rather, its position may be substantially justified if it is reasonable. H.R.Rep. No. 1418, at 14, *reprinted in* 1980 U.S.C.C.A.N. at 4993; *accord Cohen,* 837 F.2d at 585; *Callejo,* 613 F.Supp. at 1232.

■ The government's position that Yeung's complaint was not ripe for review because he could contest the denial of his application in deportation proceedings was reasonable. Section 245(a) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1255(a) (Supp.1993), ("INA") permits an immigrant to adjust his status, but prohibits him from directly appealing unsuccessful claims in district court. The alien, however, does have a "right to renew his or her [adjustment] application in [deportation]

1229, 1231 (S.D.N.Y.1985) (Sprizzo, J.). However, Congress amended the EAJA in 1985, concluding that both the government's litigious conduct and the agency action are determinative. 28 U.S.C. § 2412(d)(2)(D) (1994); *see also id.* at § 2412(d)(1)(B).

3. The courts have not explicitly stated how much weight is to be given to the government's posture and to the underlying agency action. The Supreme Court concluded that "[t]he fact that the 'position' is ... denominated in the singular, although it may encompass both the agency's prelitigation conduct and the ... [government's] subsequent litigation positions, buttresses the conclusion that only one threshold determination for the entire civil action is to be made." *Commissioner, INS v. Jean,* 496 U.S. 154, 159, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990). Because both the conduct of the Attorney General and the INS in this case was reasonable, this is not an issue.

proceedings,"[4] 8 C.F.R. §§ 245.2(a)(5)(ii), 242.17(a) (1994), to appeal this decision to the Board of Immigration Appeals ("BIA"), 8 C.F.R. §§ 236.7, 242.21 (1994), and then to appeal to a circuit court of appeals under Section 106(a) of the INA, 8 U.S.C. § 1105a(a) (Supp.1993).

This court has concluded that its direct review of an adjustment determination is precluded by the requirement of exhaustion of remedies. *Augoustinakis v. United States INS at New York, N.Y.,* 693 F.Supp. 1554, 1555 (S.D.N.Y.1988) (Conboy, J.); *see also Small v. Kiley,* 567 F.2d 163, 165 (2d Cir. 1977) (absent irreparable harm, alien must exhaust all administrative remedies); *Yim Tong Chung v. Smith,* 640 F.Supp. 1065, 1067, 1069–70 (S.D.N.Y.1986) (Sprizzo, J.) (denial of asylum by INS was not judicially reviewable because deportation proceedings had not been pursued); *Lindo v. INS,* 596 F.Supp. 1380, 1382 (S.D.N.Y.1984) (Keenan, J.); *but see Reid v. INS,* 1993 WL 267278, at *3 (S.D.N.Y. Nov. 7, 1993) (Leval, J.) (holding that district court has jurisdiction to review "determinations ancillary to deportation orders" despite the fact that alien did not exhaust all administrative remedies). Therefore, it was reasonable for the government to argue that the court did not have jurisdiction because Yeung directly challenged the INS's denial of his adjustment status, instead of going through administrative proceedings available to him.

### III.

■ The INS's denial of Yeung's application was also substantially justified. For purposes of determining if EAJA attorney's fees are due, the INS's interpretation of the CSPA and the INA need not be correct as long as it is reasonable in law and fact.[5] *De Los Santos v. INS,* 690 F.2d 56, 60 (2d Cir.1982) ("[i]t is not the province of the courts to insist that the INS's interpretations ... result in the perfect immigration scheme,

or even that they be the best interpretations possible"). The agency's statutory interpretation is considered reasonable only if it is consistent with the language, purpose and history of the legislation. *Id.* at 59.

■ Based on the language alone, it is unclear whether Yeung's initial illegal entry into the United States precludes him from being eligible for adjustment. Ordinarily, an "alien ... who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed ... to maintain continuously a lawful status since entry into the United States" is barred from adjustment of status. 8 U.S.C. § 1255(c)(2) (Supp.1993); *accord* 8 C.F.R. §§ 245.1(b)(5), 245.1(b)(6) (1994). While the CSPA waives this prohibition, Pub.L. No. 102–404, § 2(a)(5), 106 Stat.1969 (Supp.1993), it still requires an alien to meet the statute's other requirements. The CSPA defines an "eligible alien[ ]" as one who, *inter alia,* "[e]stablishes eligibility for adjustment of status under all provisions of section 245 of the ... [INA], unless the basis for ineligibility has been waived." 8 C.F.R. § 245.9(b)(6) (1994). Section 245 states that an "alien who was inspected and admitted or paroled into the United States" may apply for permanent resident status under certain specified conditions. 8 U.S.C. § 1255(a) (Supp.1993); *accord* 8 C.F.R. § 245.1 (1994). Furthermore, the implementing regulations assert that "[p]ersons who entered the United States without inspection are not eligible for CSPA benefits." 58 Fed.Reg. 35,832, 35,835 (1993); *accord* 8 C.F.R. § 245.1(b)(3) (1994); *Lin v. Meissner,* 855 F.Supp. 4, 7 (D.D.C.1994) (Hogan, J.).

On the one hand, Yeung was inspected and admitted twice, and therefore, would seem to be eligible for adjustment. On the other hand, Yeung initially entered the country without inspection, resulting in his seeming

---

**4.** This comports with due process. *Jain v. INS,* 612 F.2d 683, 689–90 (2d Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980).

**5.** The courts have given great deference to the INS's judgment. *See INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982);

*INS v. Jong Ha Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Weeks v. Quinlan,* 838 F.2d 41, 43 (2d Cir.1988); *Ferraro v. INS,* 535 F.2d 208, 209–10 (2d Cir.1976).

ineligibility. Given these two possible interpretations, the INS denial was reasonable.

The legislative history of the CSPA is not clear about Yeung's eligibility for adjustment. The CSPA is a codification and extension of Executive Order 12,711, § 2, 3 C.F.R. 283 (Comp.1990), *reprinted in* 8 U.S.C. § 1101 (Supp.1993), executed by President Bush after the Tiananmen Square repression, amending Section 245(a) of the INA and ordering "[t]he Secretary of State and the Attorney General . . . to take all steps necessary . . . to waive . . . the requirement of a valid passport and . . . to process and provide necessary documents . . . to facilitate travel across the borders of other nations and reentry into the United States . . ." of qualified Chinese nationals. CSPA, 1992 U.S.C.C.A.N. 1356.

While the CSPA liberalizes the qualifications necessary for eligibility for adjustment of status, it still excludes some aliens based on undesirable conduct. CSPA, 1992 U.S.C.C.A.N. 1358. However, neither the statute nor implementing regulations are explicit about whether Congress intended for the CSPA to cover a Chinese national who originally entered without inspection but was later admitted and inspected. *See Lin,* 855 F.Supp. at 8 n. 6 ("Senator Simon states, 'although [Chinese who otherwise qualify for the protections we established against forced return should not be barred because they entered the United States without inspection], I cannot state with certainty that all of my colleagues in the Senate who played leadership roles on this bill would agree. Clearly, cases can and will be made on both sides of this issue.' "). Under circumstances like these, the Supreme Court provides the following guidance,

> If . . . the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with

respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

My conclusion is that the INS's denial of Yeung's adjustment request was based on a permissible construction of the legislation.[6] Congress could have intended that those aliens who initially entered the United States illegally be barred from the protections of the CSPA, despite later legal conduct. Indeed, the district court for the District of Columbia concluded that it "can not accept . . . [the] position that in enacting the CSPA, Congress intended to set aside § 245 of the INA in its entirety with respect to all PRC nationals, regardless of their mode of initial entry into the United States." *Lin,* 855 F.Supp. at 7. In a case involving a suspension of a deportation denial by the BIA, this Circuit concluded,

> If the immigration authorities choose to say that a man who has gained entry by a false claim of United States citizenship . . . can win their favor only by a spotless record in later dealings with them, and apply this standard with an even hand, we cannot hold their decision to be so wanting in rationality as to be an abuse of the discretion which Congress vested in them.

*Wong Wing Hang v. INS,* 360 F.2d 715, 719 (2d Cir.1966). In sum, the INS's interpretation of the legislation was reasonable as a matter of law.

■ It was also reasonable for the INS to conclude that Yeung was not entitled to adjustment as a matter of fact. When making adjustment determinations, the INS should consider the alien's application as a whole. In the context of deportation proceedings, this Circuit has held "that administrative findings of fact made in determining an alien's eligibility for suspension must meet the statutory test of support by 'reasonable,

---

6. The INS's legal opinion does not change this. INS General Counsel offers another plausible interpretation of the CSPA, arguing that nationals who initially enter the U.S. without inspection should be considered paroled upon their reentry into the country, and hence be eligible for adjustment. (Legal Opinion, General Counsel, INS, Aug. 10, 1993).

substantial, and probative evidence on the record considered as a whole.' " *Wong Wing Hang,* 360 F.2d at 717 (quoting *Foti v. INS,* 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963)). Yeung's July, 1993 application for adjustment of status comported with CSPA requirements, including submission of all pages of his passport which were marked "admitted." 8 C.F.R. § 245.9(g)(1) (1994). However, Yeung incorrectly stated that he had last entered the United States under a grant of "parole" and that his "last arrival" in the United States was in September, 1985. (INS Form I–485). Evaluating the record as a whole leaves the INS guessing as to what Yeung's status is.

 The onus is on the alien to persuade the INS to decide his adjustment status case favorably. *Jain,* 612 F.2d at 687; *accord Tibke v. INS,* 335 F.2d 42, 44 (2d Cir.1964). Upon the request of the INS, Yeung resubmitted his application in June 1994, including additional evidence of his having been inspected and admitted into the United States. Subsequently, Yeung's adjustment request was granted, suggesting that the INS's initial denial resulted from it being unclear whether Yeung was ever inspected and admitted into the country.

In any event, the INS has great discretionary authority to deny an alien's application for adjustment of status. *INS v. Abudu,* 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988); *see also Jay v. Boyd,* 351 U.S. 345, 353, 76 S.Ct. 919, 924, 100 L.Ed. 1242 (1956). INS discretionary denials are based on an alien's illegal or deceptive conduct. *INS v. Bagamasbad,* 429 U.S. 24, 25, 97 S.Ct. 200, 201, 50 L.Ed.2d 190 (1976) (alien's "serious misrepresentations to the United States" are cause for adjustment denial); *Wong Wing Hang,* 360 F.2d at 715 (alien denied suspension of deportation under the INA for "deliberately concealing" information); *Kayani v. Sava,* 634 F.Supp. 948, 949 (S.D.N.Y.1986) (alien denied stay of deportation because, *inter alia,* alien attempted to defraud INS). Given that Yeung initially entered the country illegally and subsequently submitted documentation that was inaccurate, it was within the INS's discretion to deny his adjustment request. Hence, based on both law and fact, the INS's denial of Yeung's application was reasonable.

## IV.

In conclusion, both the Attorney General's position and the INS's denial of Yeung's adjustment request were reasonable, and thus, substantially justified under the EAJA. Therefore, an award of fees is inappropriate.

IT IS SO ORDERED.