# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JIA-JIAN JIANG,

        *Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,

        *Respondent.*

No. 03-71837

Agency No.
A72-984-225

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued January 13, 2005
Submitted June 9, 2005
San Francisco, California

Filed September 23, 2005
Amended October 24, 2005

Before: Myron H. Bright,** A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General. FED. R. APP. P. 43(c)(2).

**The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## COUNSEL

Marc Van Der Hout, Zachary Nightingale, Stacy Tolchin, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, for petitioner Jiang.

Peter K. Keisler, Assistant Attorney General, Mary Jane Candaux, Senior Litigation Counsel, Margaret J. Perry, Senior Litigation Counsel, Luis E. Perez, Litigation Counsel, U.S. Department of Justice, Washington, D.C., for respondent Alberto R. Gonzales.

## ORDER

Respondent's request for minor modification is hereby granted. The opinion filed September 23, 2005, slip op. at 13665, is amended as follows:

Slip op. at 13668:

Add Luis E. Perez to the list of counsel representing respondent as follows:

> Peter K. Keisler, Assistant Attorney General, Mary Jane Candaux, Senior Litigation Counsel, Margaret J. Perry, Senior Litigation Counsel, Luis E. Perez, Litigation Counsel, U.S. Department of Justice, Washington, D.C., for respondent Alberto R. Gonzales.

---

## OPINION

CALLAHAN, Circuit Judge:

Petitioner Jia-Jian Jiang seeks review of the Board of Immigration Appeals's ("BIA") summary affirmance of the Immigration Judge's ("IJ") decision to deny his request to renew during removal proceedings a previously denied application for adjustment of status under the Chinese Student Protection Act of 1992 ("CSPA"). The IJ denied Jiang's request on the ground that he did not meet the eligibility requirements to renew his application under 8 C.F.R. § 1245.2, and therefore, she lacked jurisdiction to grant the request. Jiang argues alternatively that (1) he did meet eligibility requirements under 8 C.F.R. § 1245.2; (2) the requirements violate the Immigration and Nationality Act ("INA"); (3) the CSPA dispenses with the eligibility requirements under 8 C.F.R. § 1245.2(a)(1); (4) the BIA's summary affirmance process violated his statutory right to an administrative appeal; and, (5) the BIA's summary affirmance in this case was improper because he raised non-frivolous novel legal issues. We deny Jiang's petition for review.

I

Jiang is an adult male and native of the People's Republic of China ("PRC"). On November 10, 1989, Jiang entered the

United States at Miami on an international flight en route from Panama to China. Jiang had been in Panama on an extended vacation visiting relatives and was returning to China on a flight that included stops and plane changes in Miami, San Francisco, and Hong Kong. Upon boarding the plane in Panama, Jiang's travel documents were retained by Pan American Airlines personnel, who informed him that the documents would be returned at a later time.

Jiang did not have a valid visa allowing him entrance to the United States; however, he was permitted to stop in Miami and San Francisco under the transit-without-visa ("TWOV") privilege pursuant to 8 C.F.R. §§ 1212.1(f) and 1214.2(c)(1).[1] While in San Francisco, Jiang began strolling around the airport and eventually discovered that he had wandered beyond the ticketing gates and into the ground transportation area. Based on his prior experience with domestic travel in China, Jiang did not believe he could reenter the airport without a passport and travel documents. Therefore, he called his brother, a lawful permanent resident living in San Francisco, whereupon Jiang's brother picked him up and took him home. Jiang has resided with his brother in the United States ever since.

In 1991, Jiang applied for protection under Executive Order ("E.O.") 12711. E.O. 12711 was issued on April 11, 1990, in response to the massacre on Tiananmen Square. The E.O. permitted temporary deferral of enforced departure ("DED") of all PRC nationals who were in the United States on or after June 6, 1989, until January 1, 1994.[2] In furtherance of the pol-

---

[1]Aliens who are passing through the United States en route to another country are aliens in "transit-without-visa." 8 U.S.C. § 1101(a)(5)(C). An alien in TWOV arrives at a port of entry under special agreements with air carriers and transportation lines, which guarantee the alien's immediate and continuous passage to a foreign destination. *See United States v. Kavazanjian*, 623 F.2d 730, 737-38 (1st Cir. 1980) (discussing TWOV).

[2]Additionally, the E.O. directed the Attorney General and the Secretary of State to waive the requirements of a valid passport and to provide nec-

icy concerns underlying E.O. 12711, Congress enacted the CSPA, which permanently altered the standard adjustment of status procedures for PRC nationals who met the statute's requirements. *Chen v. Ashcroft*, 378 F.3d 1081, 1085 (9th Cir. 2004).

Jiang's application for DED status under E.O. 12711 was approved on December 2, 1993. That same day, he formally requested permission to travel to China to visit his mother, who was ill. The Immigration and Naturalization Service ("INS")[3] granted permission and issued him a Form I-512, Authorization for Parole of an Alien into the United States ("advance parole").

Jiang traveled to China on December 16, 1993, and returned to the United States on December 28, 1993. On January 1, 1994, Jiang's DED status expired pursuant to the terms of E.O. 12711. Three days later, he filed for adjustment of status under the CSPA. Prior to ruling on Jiang's adjustment application, the INS invited Jiang's attorney to apply for a waiver of inadmissibility. Counsel, however, declined to do so, arguing instead that Jiang's TWOV entry was not fraudulent. The INS disagreed and concluded that Jiang's TWOV entry in 1989 was fraudulent because he had no intention of

---

essary documents, both within the United States and at the U.S. consulates overseas, to facilitate travel and "reentry to the Unites States in the same status such PRC nationals had upon departure." E.O. 12711(2). Although the E.O. deferred any actions by the Immigration and Naturalization Service to initiate proceedings against the alien for the duration of the Order, it did not change a beneficiary's status. *See Lin v. Meissner*, 855 F.Supp. 4, 7 (D.D.C. 1994) (noting that "the Order did not operate to grant legal immigration status to PRC nationals who did not have such status in the first place").

[3]As of March 1, 2003, the INS ceased to exist and its enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement within the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296. For ease of reference, however, we refer to the agency as the INS since that was its name during the course of proceedings in this case.

traveling on to China at the time. On August 7, 1997, the INS denied Jiang's adjustment application and commenced removal proceedings, charging that he was removable under INA §§ 212(a)(6)(C)(i) (admission through fraud or misrepresentation) and (7)(A)(i)(I) (admission without valid entry document).

During removal proceedings, Jiang filed a motion to renew his application for adjustment of status under the CSPA. In a nine-page opinion, the IJ denied Jiang's motion to renew on the ground that she lacked jurisdiction to entertain the matter because Jiang was an "arriving alien." Accordingly, she ordered Jiang removed. Jiang appealed and the BIA summarily affirmed. Jiang now petitions this court for review of the BIA's summary affirmance.

## II

We review de novo purely legal questions, including procedural challenges arising from violations of regulations, statutes or the Constitution. *DeMartinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004); *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004).

[1] The INS denied Jiang's initial application for adjustment of status on the merits. No appeal lies from the INS's denial of an application for adjustment of status, but the applicant, if not an arriving alien, retains the right to renew his or her application during removal proceedings. 8 C.F.R. § 1245.2(a)(5). An arriving alien is not eligible to renew a previously denied application for adjustment of status during removal proceedings. *Id.* § 1245.2(a)(1). The term "arriving alien" means an applicant for admission coming or attempting to come into the United States at a port of entry, or an alien seeking transit through the United States at a port of entry. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Immigration and Nationality Act (granting parole for urgent humanitarian reasons or significant public benefit). 8 C.F.R. § 1001.1(q). Thus, as an arriving alien,

Jiang was not eligible to renew his application for adjustment of status during removal proceedings.

[2] We join the First and District of Columbia Circuits in rejecting Jiang's argument that he was not an arriving alien because he was inspected and admitted when he entered the United States on "transit-without-visa" status in 1989. *See Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 478 (D.C. Cir. 1996) (holding that TWOV passengers may board planes bound for the U.S. without U.S. visas, so long as they are merely connecting to another flight that will take them on to another country); *see also United States v. Kavazanjian*, 623 F.2d at 736-37 (determining that an alien who steps off a plane and is in the airport waiting for a connecting flight in TWOV has not made an "entry" into the U.S. because he is still within the custody of the carrier or INS and is therefore not deemed to be free from official restraint); *accord Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1674-76 (Fed. Cir. 1996).

[3] We also reject Jiang's alternative argument, that he was not an arriving alien because his "deferred enforced departure" status was a special form of lawful status conferred by E.O. 12711. Section (3)(b) of E.O. 12711 directs the Secretary of State and the Attorney General to provide "*maintenance* of lawful status for purposes of adjustment of status or change of non-immigrant status for such PRC nationals *who were in lawful status* at any time on or after June 5, 1989 . . . ." E.O. 12711(3)(b) (emphasis added). A plain reading of this language requires maintenance of lawful status for PRC nationals who already had lawful status, but does not confer lawful status in the first instance, as Jiang suggests. *Lin*, 855 F.Supp. 4, 7. Jiang offers no authority to support his argument, or to refute the legal opinion of the INS's General Counsel, who also determined that E.O. 12711 does not confer lawful status in the first instance.[4]

---

[4]*See* 70 Interpreter Releases 1095 (August 23, 1993) (explaining that E.O. 12711's reference to travel was not intended to provide legitimate immigration status to those who did not already have that status).

**[4]** Similarly, we reject Jiang's claim that 8 C.F.R. § 1245.2(a) (the regulation prohibiting arriving aliens from renewing an adjustment application during removal proceedings) is invalid because it violates INA § 245(a). Section 245(a) provides that "[t]he status of an alien *who was inspected and admitted or paroled . . .* may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ." INA § 245(a), 8 U.S.C. § 1255(a) (emphasis added). The regulation that Jiang challenges, 8 C.F.R. § 1425.2(a), states that arriving aliens may not renew a previously denied adjustment application during removal proceedings — this is not inconsistent with the provisions of INA § 245(a).[5] Moreover, where, as here, Congress has

---

[5]8 C.F.R. § 1245.2(a) states:

(a)    General — (1) Jurisdiction. An alien who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966, and § 1245.1 shall apply to the director having jurisdiction over his or her place of residence unless otherwise instructed in 8 CFR part 1245, or by the instruction on the application form. After an alien, other than an arriving alien, is in deportation or removal proceedings, his or her application for adjustment of status under section 245 of the Act or section 1 of the Act of November 2, 1966 shall be made and considered only in those proceedings. An arriving alien, other than an alien in removal proceedings, who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966, and § 1245.1 shall apply to the director having jurisdiction over his or her place of arrival. An adjustment application by an alien paroled under section 212(d)(5) of the Act, which has been denied by the director, may be renewed in removal proceedings under 8 CFR part 1240 only if:

(i) The denied application must have been properly filed subsequent to the applicant's earlier inspection and admission to the United States; and

(ii) The applicant's later absence from and return to the United States was under the terms of an advance parole authorization on Form I-512 granted to permit the applicant's absence and return to pursue the previously filed adjustment application.

expressly authorized an agency to make rules, the "reviewing court must find the agency's construction permissible unless it is arbitrary, capricious, or manifestly contrary to the statute." *Tovar v. United States Postal Serv.*, 3 F.3d 1271, 1276 (9th Cir. 1993). Jiang has not made the showing required by *Tovar*.

**[5]** Jiang's argument that the CSPA dispenses with the renewal requirements under 8 C.F.R. § 1425.2 is equally unavailing. The CSPA affects only eligibility for adjustment of status and does not purport to create application procedures independent of those created by section 245 of the INA.[6] In fact, the CSPA expressly refers to applications "for adjustment of status under section 245 of the [INA]." Chinese Student Protection Act of 1992 § 2(a), Pub. L. No. 102-404. This shows Congress's intent that applications for adjustment of status under the CSPA be subject to the same procedures as all other adjustment-of-status applications.

**[6]** Jiang also argues the summary affirmance procedures that mandate boilerplate language merely affirming the *result* of the IJ's decision effectively deprive him of his statutory right to an administrative appeal because they preclude a statement of reasoned decision by the BIA. We rejected this argument in *Carriche v. Ashcroft*, 350 F.3d 845 (9th Cir. 2003). There, the petitioners argued that the streamlining pro-

---

[6]In particular, Section 2(a): dispenses with the eligibility requirements under 8 U.S.C. § 1182(a)(5)(A) (labor certification) and (7)(A) (possession of valid travel documents); deems approved under INA § 204(a) an alien's petition for classification as an employment-based immigrant under INA § 203; permits consideration of the alien's application for adjustment without regard to whether an immigrant visa number is immediately available; permits the Attorney General to waive certain grounds for inadmissibility listed under INA § 212(a), other than controlled substance traffickers and security-related grounds; suspends INA § 202(a)(2) (numeric limitations on the number of visas that can be issued); and deems inapplicable INA § 245(c) (alien crewman, aliens admitted TWOV, and aliens in unlawful non-immigrant status ineligible for adjustment of status).

cedures violated their due process rights under the Fifth Amendment. *Id.* at 848. Although Jiang argues that the procedures violate his statutory right to an administrative appeal under the INA, the substance of his arguments are nearly identical to those made in *Carriche*, in which we held that the petitioners received all of the administrative appeals to which they were entitled by statute and that the Constitution does not require that the BIA do more.[7] *Id.* at 850. We find our reasoning in *Carriche* to be controlling here, and reject Jiang's challenge to the boilerplate language of the BIA's summary affirmance.

[7] Finally, Jiang has not shown that the BIA violated its own streamlining regulations (specifically 8 C.F.R. § 1003.1(e)(4)(i) (formerly 8 C.F.R. § 1003.1(7)(ii))) by issuing a summary affirmance in this case. The streamlining regulations authorized a single BIA member to affirm the IJ's decision without opinion if the board member determines that the result was correct; that any errors were harmless or nonmaterial; and that (A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or (B) the factual and legal questions raised on appeal are so insubstantial that three-member review is not warranted. *Chen*, 378 F.3d at 1086. Jiang's substantive arguments are not substantial enough to warrant three-member review.

The petition for review is DENIED.

---

[7]In *Carriche*, we noted that petitioners' misgivings "center around the lack of transparency in the process, the increasing frequency in which the process is invoked, the speed with which appeals are decided, and a belief that the BIA may be abdicating its statutorily-mandated role of appellate review." 350 F.3d at 850. These are the same concerns raised by Jiang.