**Lin Qi–Zhuo, Appellant,**

v.

**Doris MEISSNER, Commissioner, United States Immigration and Naturalization Service, Appellee.**

No. 94–5259.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 31, 1995.

Decided Nov. 21, 1995.

Mark A. Mancini, argued the cause, and filed the briefs, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the brief.

John D. Bates, Assistant United States Attorney, entered an appearance.

Before: WALD, SILBERMAN and WILLIAMS, Circuit Judges.

WALD, Circuit Judge:

This case involves the relationship between the Chinese Student Protection Act, 8 U.S.C. § 1255 note (1994) ("CSPA"), and the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. (1994) ("INA"). When appellant Lin Qi–Zhuo, a Chinese national who has resided in the United States since 1987, applied for adjustment of his immigration status to that of a lawful permanent resident under the CSPA, the Immigration and Naturalization Service ("INS") denied his application. The INS based its denial on the conclusion that the CSPA, which alters standard immigration requirements for certain nationals of the People's Republic of China ("PRC"), does not exempt covered nationals from the basic INA requirement that status adjustment is available only to those nonimmigrants who have been "inspected and admitted or paroled into the United States." 8 U.S.C. § 1255(a). Because appellant initially entered the United States illegally, and was never "admitted" or "paroled," the INS determined that he was unqualified for the adjustment. The district court, denying Lin's request for a declaratory judgment that the CSPA permits adjustment of covered aliens regardless of their illegal entry, granted summary judgment to the INS. Because we agree that the text and structure of the CSPA makes clear that the Act does *not* exempt covered PRC nationals from the INA's threshold inspection requirement, we affirm the district court.

## I. BACKGROUND

In general, the INA divides foreign nationals in the United States into two categories: "immigrants," who *intend* to remain permanently in the United States, and "nonimmigrants," who enter the country only for a limited time and purpose. *See Jain v. INS*, 612 F.2d 683, 686 (2d Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789

(1980); *Pan v. Reno,* 879 F.Supp. 18, 19 (S.D.N.Y.1995). Section 245 of the INA, 8 U.S.C. § 1255, sets out the standard process by which a nonimmigrant can adjust to the status of an immigrant. Subsection (a) of § 245 makes clear that adjustment is available only to those nonimmigrants who were "inspected and admitted or paroled into the United States." 8 U.S.C. § 1255(a). Subsection (c) of § 245 excludes from eligibility those aliens who, even though originally admitted legally into the country, have let their legal status lapse while residing here. 8 U.S.C. § 1255(c) ("Subsection (a) of this section shall not be applicable to ... an alien ... who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States.").

On April 11, 1990, in the wake of the Tiananmen Square uprising in Beijing, President Bush signed Executive Order 12,711, which temporarily suspended—until January 1, 1994—the enforced departure of any PRC national who was in the United States "on or after June 5, 1989, up to and including the date of [the] Order." Executive Order 12,-711, 55 Fed.Reg. 13,897 (1990), *reprinted in* 8 U.S.C. § 1101 note (1994) ("EO 12,711"). The Order also directed the Secretary of State and the Attorney General to provide for the "maintenance of lawful status for purposes of adjustment of status ... for such PRC nationals who were in lawful status at any time on or after June 5, 1989." EO 12,711, at § 3(b).

In 1992, Congress passed the CSPA, which permanently altered the standard INA adjustment process for Chinese nationals who met the statute's specific residency requirements.[1] Subsection (a) of the CSPA outlines the special eligibility rules that apply with respect to "an alien described in subsection (b) [who] applies for adjustment of status under section 245 of the [INA]." CSPA § 2(a). Subsection (b) defines "aliens covered" in terms of three requirements: first, the alien applying for adjustment must be a PRC national as described in EO 12,711 (*i.e.,* must have been in the United States on or after June 5, 1989, up to and including the date of the Order); second, the PRC national must have resided continuously in the United States since April 11, 1990; and third, he or she must not have been physically present in the PRC for more than 90 days between April 11, 1990, and the date of enactment of the CSPA (October 9, 1992). CSPA § 2(b).

The parties to this dispute agree that appellant qualifies as a covered alien under CSPA § 2(b), and therefore his application should be treated under the rules set forth in the CSPA rather than the usual INA process. The parties disagree, however, as to the scope of these rules, set out in subsection (a), authorizing adjustment. CSPA § 2(a). Among the "rules" that apply to covered aliens seeking adjustment under § 245 is an express exemption from § 245(c) of the INA, which under normal circumstances makes adjustment *unavailable* to nonimmigrants whose legal status has lapsed at the time of application. CSPA § 2(a)(5). Thus, the CSPA is clear that a protected PRC national,

---

1. The relevant text of the CSPA reads:
**Sec. 2. Adjustment to lawful permanent resident status of certain nationals of the People's Republic of China.**
**(a) In general.** Subject to subsection (c)(1), whenever an alien described in subsection (b) applies for adjustment of status under section 245 of the Immigration and Nationality Act [this section] during the application period (as defined in subsection (e)) the following rules shall apply with respect to such adjustment:
. . . .
**(5)** Section 245(c) of such Act [subsection (c) of this section] shall not apply.
**(b) Aliens covered.**—For purposes of this section, an alien described in this subsection is an alien who—

**(1)** is a national of the People's Republic of China described in section 1 of Executive Order No. 12711 [Ex.Ord. No. 12711, Apr. 11, 1990, 55 F.R. 13897, set out as a note under section 1101 of this title] as in effect on April 11, 1990;
**(2)** has resided continuously in the United States since April 11, 1990 (other than brief, casual, and innocent absences); and
**(3)** was not physically present in the People's Republic of China for longer than 90 days after such date and before the date of the enactment of this Act [Oct. 9, 1992].
8 U.S.C. § 1255 note (1994) (alterations in original).

as distinguished from another type of nonimmigrant, can apply for adjustment even if he or she has not maintained a lawful immigration status.

The heart of appellant's case is his claim that, in addition to its *explicit* exemption from § 245(c) of the INA, the CSPA contains an *implicit* exemption for covered aliens from the threshold inspection requirement of § 245(a). To support his theory, Lin argues that subsection (b) of the CSPA, outlining the qualifications for "aliens covered," provides an exhaustive and exclusive list of the requirements for adjustment of status under the Act, and does not include lawful entry as a prerequisite. We agree with the district court that the plain meaning of the CSPA is otherwise and that Lin's argument must fail.

## II. DISCUSSION

### A. The Language and Structure of the Statute

An endlessly reiterated principle of statutory construction is that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage. *See, e.g., United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955); *United States v. Herbert Bryant, Inc.,* 543 F.2d 299, 307 & n. 32 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). For purposes of this case, we must interpret two distinct subsections of the CSPA in a manner that gives meaning to both. Subsection (a) catalogs the special "rules" that apply to covered Chinese nationals who seek adjustment under § 245 of the INA; among these rules are several exclusions from the standard immigration provisions, including an express exemption from the requirements of § 245(c) of the INA. Subsection (b) follows with its definition of "aliens covered" by the Act, which outlines three residency requirements for coverage. If, as appellant claims, the residency requirements of subsection (b) alone entitle an alien to adjustment, the "rules" established in subsection (a), CSPA § 2(a)(1)–(5), including the express exemption from the requirements of INA § 245(c), would be rendered entirely superfluous.

Lin's theory that subsection (b)'s residency specifications constitute an exhaustive list of the prerequisites for status adjustment under the CSPA violates another principle of statutory construction—that an item which is omitted from a list of exclusions is presumed not to be excluded. *See United States v. Goldbaum,* 879 F.2d 811, 813 (10th Cir.1989); *cf. United Steelworkers of Am. v. Marshall,* 647 F.2d 1189, 1232 (D.C.Cir.), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). The CSPA contains *express* exemptions from several standard immigration provisions; for example, the Act provides an exemption from certain paragraphs of § 212 of the INA dealing with labor certification and documentation requirements (CSPA § 2(a)(3)(A)); the per country numerical limits on family-sponsored and employment-based immigrants established by § 202(a)(2) of the INA (CSPA § 2(a)(4)); and the requirements of § 245(c) of the INA barring from adjustment certain aliens, such as those whose legal status has lapsed, who would otherwise qualify under § 245(a) (CSPA § 2(a)(5)). Noticeably absent from this list is any mention of § 245(a), and we decline Lin's invitation to read into the CSPA an exemption that Congress failed to include.

The only other court which has addressed this precise issue agreed with our reading of the CSPA, holding that "[i]f Congress had intended that everyone who was covered by the CSPA would qualify automatically for a status adjustment—regardless of any additional restriction imposed by § 245—it would not have been necessary for the legislators to add a provision to the CSPA stating that § 245(c) did not apply to covered PRC nationals." *Pan,* 879 F.Supp. at 19–20.

Lin's argument to the contrary—that the language of the CSPA explicitly defines covered aliens only by the three residency requirements established in subsection (b) of the Act—misses the mark. There is no dispute that Lin qualifies as an "alien covered" by the CSPA; the only dispute involves the actual application of the statute to those aliens it concededly "covers." Thus appellant gains no ground when he points to the language of the statute or the legislative

history for the proposition that he is "covered" by the CSPA. What he needed to show, but could not, is that Congress intended for the Act to waive § 245(a)'s inspection requirement for covered aliens like himself.

## B. *Legislative History*

■ Where, as here, the plain language of the statute is clear, the court generally will not inquire further into its meaning, *Norfolk & W. Ry. Co. v. American Train Dispatchers' Ass'n*, 499 U.S. 117, 128, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991); *Lever Bros. Co. v. United States*, 877 F.2d 101, 105 (D.C.Cir. 1989), at least in the absence of "a clearly expressed legislative intent to the contrary." *Reves v. Ernst & Young*, 507 U.S. 170, 177, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). We are not convinced in this instance by appellant's claim that "[o]ne need only look to [the] House Report" to find clear evidence that his interpretation of the Act is the correct one. The legislative history seems, at best, inconclusive on the application of § 245(a) to covered aliens, and in the realm of legislative interpretation, inconsistent history certainly cannot override plain language.

Lin points to language suggesting that the CSPA was intended to supplant EO 12,711, and to reach as broadly as the Executive Order, which he argues "covered" any Chinese national meeting the residency requirements. However, even though it is true that EO 12,711 put a temporary halt on all enforced *deportations,* the Order's only reference to *status adjustment* calls for the "maintenance of lawful status for purposes of adjustment of status" only for "such PRC nationals who were in lawful status at any time on or after June 5, 1989." EO 12,711, § 3(b), *available in* H.Rep. No. 102–826, 102d Cong., 2d Sess. 3–4, *reprinted in* 1992 U.S.C.C.A.N. 1356.

Lin also cites to the House Report's summary of the CSPA, which states that the Act "authorizes the Attorney General to grant lawful permanent residency to *any* national of the People's Republic of China [who meets subsection (b)'s three requirements]." *Id.* at 1358 (emphasis added). The determinacy of this single sentence, however, is undermined by ambiguous language in a letter from the Congressional Budget Office appended to the Report, explaining that the CSPA "contains several other provisions that would *simplify and facilitate* the adjustment of status for Chinese nationals." *Id.* at 1360 (emphasis added). Notably, the letter makes no assumption that the Act would *guarantee* the adjustment of PRC nationals.

Appellant also relies, in his effort to establish legislative intent, on post-enactment comments from two Congressmembers involved in the passage of the Act. Specifically, Lin points to a reported comment by Rep. Nancy Pelosi regarding her interpretation of the CSPA to waive § 245(a), as well as a letter from Sen. Paul Simon stating that "Chinese who otherwise qualify for the protections we established against forced return should not be barred because they entered the United States without inspection." Letter from Paul Simon to Sam Chang & Mark Mancini (Sept. 8, 1993). In general, post-enactment commentaries warrant scant consideration in discerning legislative intent. *See, e.g., Washington v. Gunther*, 452 U.S. 161, 176 n. 16, 101 S.Ct. 2242, 2251 n. 16, 68 L.Ed.2d 751 (1981). In this case the caution is particularly apt, as Sen. Simon's letter also acknowledges that Congress "did not specifically waive the requirements of § 245(a)"; that the Senator "expect[s] that this is an issue that will be the subject of litigation"; and that Sen. Simon cannot vouch for the agreement of his colleagues in the Senate on this point. In sum, the expressions of individual legislators after the fact cannot save the day for appellant.

■ In a final effort to establish congressional intent to waive the inspection requirement of § 245(a), Lin points to the treatment under EO 12,711 of PRC nationals who entered the United States illegally but were later granted parole. Many aliens who initially entered without inspection (EWIs) apparently applied for "advanced parole," which allowed them to leave the country for up to two months for humanitarian or business purposes and return in the same status they enjoyed when they left. Although their journey abroad did not confer any new legal

status on them, upon return to the country they claimed they had been "inspected and paroled" and thus qualified for adjustment under § 245(a). Appellant claims that the INS freely granted advanced parole to EWIs during the life of EO 12,711, and that Congress intended for the CSPA merely to replace, rather than alter, the provisions that had been in place under the Executive Order. The government conceded during oral argument that the INS had indeed granted advanced parole liberally under the Executive Order. However, the agency became less generous when it realized that its advanced parole grants had created a "loophole" with respect to the adjustment of all EWIs (not just PRC nationals under the CSPA) who left the country on advanced parole and who could then claim eligibility for adjustment under § 245(a) upon return. The INS has since attempted to close this loophole,[2] and we do not believe the agency's former practice in any way constituted a binding interpretation of the CSPA.

Even were we to determine that the CSPA left the application of § 245(a) ambiguous in any degree, we would be obliged to defer to the INS's permissible interpretation of the statute. *National Labor Relations Bd. Union v. Federal Labor Relations Auth.*, 834 F.2d 191, 198–99 (D.C.Cir.1987) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). On this particular issue, the INS has clearly stated its position that applicants for adjust-

ment under the CSPA must meet "all requirements" of § 245 of the INA, unless expressly exempted by the statute. 8 C.F.R. § 245.9(b)(6). The only other court to have directly addressed the application of § 245(a) to PRC nationals under the CSPA also concluded that "the CSPA is not inconsistent with 8 C.F.R. § 245.9(b)(6) and did not require the INS to overlook plaintiff's lack of inspection when considering his status adjustment application." *Pan*, 879 F.Supp. at 20.[3]

### III. CONCLUSION

Because we find that the text and structure of the CSPA leave no doubt that § 245(a) of the INA applies to PRC nationals seeking adjustment of status under the CSPA, we affirm the district court's order granting summary judgment to the INS.

*So ordered.*

---

**2.** The current INS practice is to examine advanced parole applications for bona fide humanitarian need. In a decision Lin does not challenge on appeal, the INS denied Lin's pre-adjustment-application request for advanced parole because it did not find that he had demonstrated any bona fide humanitarian need to return to China.

In a Cable which appellant does not challenge on appeal, the INS clarified its position that EO 12,711 would not permit an EWI to be "paroled" upon reentry into the United States because "in order to reenter in a status, a Chinese national had to have first entered in and maintained a status. Since an EWI never entered in a status ... reentry as directed by the Executive Order is not possible. It follows, therefore, that parole pursuant to the Executive Order ... is inappropriate." INS Cable # 5, 245–C/HQ 739.3–C (Aug. 13, 1993), *quoted in* 70 Interpr. Releases

1095 (Aug. 23, 1993). The Cable concluded that, under any circumstances, parole requests unsupported by evidence of emergent or humanitarian need (including requests for the sole purpose of qualifying for CSPA benefits) should be denied. *See id.*

**3.** Another recent case, *indirectly* addressing the reasonableness of 8 C.F.R. § 245.9(b)(6), adds further support to our determination. In *Yeung v. Reno*, 868 F.Supp. 53 (S.D.N.Y.1994), the court denied an award of attorney's fees to an EWI who had challenged the INS's denial of adjustment under the CSPA and had prevailed on his challenge through a pretrial settlement. Although the court never reached the merits of the plaintiff's CSPA claim because the parties settled their dispute prior to trial, it did determine that the agency's position had not been unreasonable and therefore did not justify an award of fees. *Id.* at 57.