77 F.3d 1194
 96 Cal. Daily Op. Serv. 1412, 96 Daily Journal
D.A.R. 2439
Yu Xian TANG; Ngan Tay Chok; Yi Xu Feng; Ching Shueng Ku;
Jian Xin Li; Qiu Huan Ning; Yeun Chong Tan;
Wei Qiang Zhang; Zhi Liang Zhang;
Zhong Ren Zhen, Plaintiffs-Appellants,
v.
Janet RENO, Attorney General; Phillip L. Waters, Acting
District Director, INS, San Francisco; Joseph Thomas,
Director, INS Western Service Center; Doris Meissner, INS
Commissioner; Immigration and Naturalization Service,
Defendants-Appellees.
 No. 95-15421.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1996.
Decided March 4, 1996.
 
 Eugene C. Wong, Robert G. Ryan, Law Offices of Valencia & Wong, San Francisco, California and Priscilla Wong, San Francisco, California, for plaintiffs-appellants.
 Norah Ascoli Schwarz, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Vaughn R. Walker, District Judge, Presiding.
 Before: BOOCHEVER and FERNANDEZ, Circuit Judges, and KELLEHER,* District Judge.
 FERNANDEZ, Circuit Judge:
 
 
 1
 Yu Tang and nine other citizens of the People's Republic of China (PRC), all of whom entered the United States without inspection, appeal the district court's summary judgment in favor of the United States Attorney General and others.[1] Tang challenges the promulgation and enforcement of 8 C.F.R. § 245.9(b)(6). She asserts that it violates the Chinese Student Protection Act of 1992, 106 Stat.1969 (1992), reprinted in 8 U.S.C. § 1255 note (CSPA), and 5 U.S.C. § 706(2)(A) and (C). The regulation denies adjustment of status under the CSPA to those PRC citizens who entered the United States without inspection. We affirm.BACKGROUND
 
 
 2
 The CSPA grew out of President Bush's Executive Order of April 11, 1990, which directed the Attorney General to refrain from forcing the departure of certain nationals from the People's Republic of China who were in the United States. The Executive Order was to be effective through January 1, 1994. Executive Order No. 12,711, reprinted in 8 U.S.C. § 1101. The affected group was composed of those who were in the United States on or after June 5, 1989 up to April 11, 1990. In order to implement the Order, the Attorney General and the Secretary of State were directed to waive the requirements of a valid passport for a time and to process and provide travel documents. See id.
 
 
 3
 Congress then passed the CSPA in 1992. See CSPA § 2. The legislation specifically exempts certain PRC nationals applying for adjustment of status from certain specific statutory requirements; it also gives the Attorney General the discretion to waive certain other requirements for one of three reasons.
 
 
 4
 The INS issued an interim rule effective July 1, 1993. The supplementary explanation explicitly stated that the CSPA did not waive the requirement that applicants establish that they were inspected and admitted or paroled into the United States by an immigration officer and that "[p]ersons who entered the United States without inspection are not eligible for CSPA benefits." 58 Fed.Regs. 35,832, 35,835 (1993).
 
 
 5
 The INS regulation itself requires the applicant to establish eligibility for adjustment of status under all unwaived provisions of § 1255 (§ 245 of the Immigration and Nationality Act). 8 C.F.R. § 245.9(b)(6) (section 1255(a) specifically requires that an alien be "inspected and admitted or paroled into the United States"). Subsection (f) of the regulation notes that the CSPA waived compliance with § 1255(c) (§ 245(c) of the Act). That section does not refer to inspection or parole. The regulation also requires the applicant to establish that he is not excludable under provisions of 8 U.S.C. § 1182 (§ 212 of the Act), which were not waived by the CSPA. See 8 C.F.R. § 245.9(b)(5), (d) (section 1182 describes various classes of excludable aliens).
 
 
 6
 Tang applied for adjustment of status on June 30, 1993. The INS denied Tang's application on the ground that she entered the United States without inspection.[2] No appeal was possible from that decision. See 8 C.F.R. § 245.2(a)(5)(ii). Thus, Tang brought a declaratory relief action in district court in which she sought to have the regulation invalidated. The district court granted judgment for the government after a hearing on cross motions for summary judgment. This appeal followed.
 
 JURISDICTION AND STANDARDS OF REVIEW
 
 7
 The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 8
 A grant of summary judgment is reviewed de novo. Kim v. Meese, 810 F.2d 1494, 1496 (9th Cir.1987). The inquiry is "whether the evidence, viewed in the light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law." Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), petition for cert. filed, 64 U.S.L.W. 3271 (Sept. 20, 1995) (No. 95-481).
 
 
 9
 The BIA's interpretation of a statute is reviewed de novo. Lepe-Guitron v. INS, 16 F.3d 1021, 1024 (9th Cir.1994). In interpreting a statute we must examine its language. If "the statute is clear and unambiguous, that is the end of the matter." Sullivan v. Stroop, 496 U.S. 478, 482, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990) (internal quotation omitted); see also INS v. Phinpathya, 464 U.S. 183, 189, 104 S.Ct. 584, 589, 78 L.Ed.2d 401 (1984). There is no need to look beyond the plain meaning in order to derive the "purpose" of the statute. See Gumport v. Sterling Press (In re Transcon Lines ), 58 F.3d 1432, 1437-38 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1016, 134 L.Ed.2d 96 (Dec. 13, 1995) (No. 95-945). At least there is no need to do so when the result is not absurd. Id. at 1437.
 
 
 10
 If the language is not clear, Congress's intent must still be ascertained. For example, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (alteration in original) (citations omitted). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).
 
 
 11
 If, however, the statute is ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782. And the "agency's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless it is 'arbitrary, capricious, or manifestly contrary to the statute.' " Romero v. INS, 39 F.3d 977, 980 (9th Cir.1994) (quoting Chevron, U.S.A., Inc., 467 U.S. at 844, 104 S.Ct. at 2782).
 
 DISCUSSION
 
 12
 We find no ambiguity in the CSPA; its provisions are clear. Simply stated, Congress did not waive the requirement that a Chinese national attempting to take advantage of the CSPA must have entered the country legally through inspection and admittance or parole. Tang argues that Congress did intend to extend the CSPA's benefits to those Chinese nationals who entered the country without inspection. She points to the fact that Congress waived visa petition procedures, as well as several requirements for eligibility for an immigrant visa and admissibility as an immigrant. See CSPA § 2(a)(1)-(3). Tang also argues that the inspection requirement was waived because Congress waived the possession of certain documents usually necessary for admittance. See id. § 2(a)(3)(A); 8 U.S.C. § 1182(7)(A). Unfortunately for her, nothing in the CSPA specifically waives the inspection requirement.
 
 
 13
 The statute does allow the Attorney General to waive many, but not all, of the bases for exclusion in § 1182(a). See CSPA § 2(a)(3)(B). That, however, merely shows that Congress was alert to the fact that it could waive one or more provisions, but that others would remain intact. The CSPA makes § 1255(c) inapplicable but does not grant the Attorney General discretion to alter any other § 1255 requirements, such as § 1255(a) and § 1255(g)-(i), the subsections addressing entry without inspection or parole. See CSPA § 2(a)(3)(B), (5). That strongly indicates that the inspection provisions were not waived. "[A]n item which is omitted from a list of exclusions is presumed not to be excluded." Qi-Zhuo v. Meissner, 70 F.3d 136, 139 (D.C.Cir.1995). As the court in Qi-Zhuo held, the text of the CSPA did not exempt Chinese nationals from the threshold requirement of legal entry. See id. at 139-40. In doing so, it quoted another case that reached the same conclusion, Pan v. Reno, 879 F.Supp. 18 (S.D.N.Y.1995), which declared:
 
 
 14
 If Congress had intended that everyone who was covered by the CSPA would qualify automatically for a status adjustment--regardless of any additional restrictions imposed by § 245--it would not have been necessary for the legislators to add a provision to the CSPA stating that § 245(c) [8 U.S.C. § 1255(c) ] did not apply to covered PRC nationals.
 
 
 15
 Id. at 19-20; see also Yeung v. Reno, 868 F.Supp. 53, 58 (S.D.N.Y.1994), aff'd, 57 F.3d 1062 (2d Cir.1995) (unpublished disposition) (holding "that the INS's denial of Yeung's adjustment request [due to entry without inspection] was based on a permissible construction of the legislation).
 
 
 16
 The text is, therefore, quite clear and no further review of it is necessary unless the result is absurd. It is not. See Gumport, 58 F.3d at 1437; cf. Green v. Bock Laundry Mach. Co., 490 U.S. 504, 509-10, 109 S.Ct. 1981, 1984-85, 104 L.Ed.2d 557 (1989). As the government points out, because the Act restricts its coverage to individuals in the United States within a certain period, Congress wisely retained inspection and admission requirements See CSPA § 2(b). Administratively it is not easy to be sure of when an alien entered the United States and how long he has been present here unless the INS has inspected and admitted or paroled the alien into the United States within the relevant time frame. If inspection takes place, a record is likely to exist. The government concludes that "[w]ithout this proof of date of entry, there is nothing to stop plaintiffs in this case, or aliens in any other situation where benefits depend upon date of entry, from claiming presence during the qualifying period." There is some force to this argument.
 
 
 17
 Tang responds to that by citing several subsections of 8 C.F.R. § 245.9, which allow for alternative documentation to substitute for passports and other travel documents. For example, Tang cites to § 245.9(g)-(h). These regulations merely address what secondary evidence is acceptable when the alien files an application for adjustment of status; it does not address the types of documents necessary when one seeks admittance to the United States in the first place. In any event, the provisions cast no doubt upon the statute's own language. Moreover, they do not suggest that the INS thought that entry without inspection was permissible because they are a part of the very regulation which took the contrary position.
 
 
 18
 In short, the text of the statute is clear, does not waive inspection requirements, and that is not absurd. However, Tang asks us to examine the legislative history. We do not think that is necessary and it could be improper. See Sullivan, 496 U.S. at 482, 110 S.Ct. at 2502; Green, 490 U.S. at 509-10, 109 S.Ct. at 1984-85; Gumport, 58 F.3d at 1437-38. Nevertheless, we have looked at the history. Having done so, we agree with the District of Columbia Circuit that the history does not help at all. See Qi-Zhuo, 70 F.3d at 140-41. Were we to discover that the statute itself is murky, the legislative history would not make it limpid. Murky it would remain.
 
 
 19
 Because the statute is clear, the INS did not exceed the scope of its authority in promulgating and enforcing 8 C.F.R. § 245.9(b)(6). Indeed, if it had adopted the contrary position, that itself would have been temerarious to say the least. See Chevron, 467 U.S. at 843 & n. 9, 104 S.Ct. at 2781 & n. 9. However, if we did find some ambiguity in the statute we would not determine that the regulation is an impermissible construction and clarification of it. Rather, we would give the agency's interpretation "considerable weight" because it is not " 'arbitrary, capricious, or manifestly contrary to the statute.' " Romero, 39 F.3d at 980 (citation omitted). In fine, we would uphold that construction.
 
 CONCLUSION
 
 20
 Tang entered this country without inspection and she would like to remain. We are unable to say that no provision of law will permit her to do so. That is not before us. What we can say, however, is that no amount of sortilege can turn the plain text of the CSPA into a statute which waives the § 1255(a) requirement that an alien be "inspected and admitted or paroled into the United States." That being so, the CSPA does not offer her the relief she seeks.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Hereinafter, Tang is used in the singular to refer to all ten appellants
 
 
 [2]
 Both the government and Tang agree that all plaintiffs were denied adjustment of status based upon their entry without inspection