**NORTH BROWARD HOSPITAL DISTRICT d/b/a Broward General Medical Center, North Broward Hospital District d/b/a North Broward Medical Center, and North Broward Hospital District d/b/a Imperial Point Medical Center, Plaintiffs,**

v.

**Donna E. SHALALA, Secretary, Department of Health and Human Services, Defendant.**

**Civil Action No. 96–76 SSH.**

United States District Court, District of Columbia.

March 9, 1998.

Ronald N. Sutter, Powers, Pyles, Sutter & Verville, Washington, DC, for Plaintiffs.

Sheila M. Lieber, David A. Bono, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant.

### OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiffs' motion for summary judgment, defendant's opposition thereto and cross-motion for summary judgment, plaintiffs' memorandum in opposition to defendant's cross-motion and in further support of their motion for summary judgment, and defendant's reply in support of its cross-motion for summary judgment. Upon consideration of the entire record, the Court grants plaintiffs' motion and denies defendant's cross-motion. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," Fed.R.Civ.P. 52(a), the Court nevertheless sets forth its reasoning.

### BACKGROUND

Originally enacted in 1965, the Medicare program, title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, provides health benefits to individuals who are over the age of 65, have a qualifying disability, or suffer from end-stage renal disease. *Id.* at § 1395c. Although defendant has primary responsibility for administering the Medicare program, some of that responsibility has been delegated to the Health Care Financing Administration ("HCFA"). The HCFA, in

turn, has entered into agreements with "fiscal intermediaries," under which the intermediaries act as agents of the Secretary by providing payment for services covered by Medicare.

Among other benefits, Medicare provides coverage for hospital services. In 1983, Medicare abandoned its system of reimbursing service providers for inpatient care according to the reasonable costs that the providers incurred, and adopted a Prospective Payment System ("PPS"). The PPS reimburses providers according to a predetermined set of payment rates for various diagnoses and procedures. 42 U.S.C. § 1395ww(d).

The PPS allows for numerous adjustments to its basic payment rates. Among them are adjustments for hospitals serving a significantly disproportionate share of low-income patients. *Id.* at § 1395ww(d)(5)(F). There are two methods for determining eligibility for a disproportionate share hospital ("DSH") adjustment: the "proxy method," *id.* at § 1 395ww(d)(5)(F)(i)(I), and the "Pickle method," *id.* at § 1395ww(d)(5)(F)(i)(II).

Under the proxy method, a service provider qualifies for a DSH adjustment if a certain fraction of its total inpatient days are attributable to Medicaid patients and Medicare patients who receive supplemental security income.[1] *Id.* at §§ 1395ww(d)(5)(F)(i)(I), 1395ww(d)(5)(F)(v) and (vi). Under the Pickle method, eligibility turns on a provider's share of net inpatient care revenues received from state and local government sources for indigent care.[2] *Id.* at § 1395ww(d)(5)(F)(i)(II). In particular, the Pickle method provides a DSH adjustment to a hospital that

is located in an urban area, has 100 or more beds, and can demonstrate that its net inpatient care revenues (excluding any of such revenues attributable to this subchapter [Medicare] or State plans approved under subchapter XIX of this chapter [Medicaid]), during the cost reporting period in which the discharges occur, for indigent care from State and local government sources exceed 30 percent of its total of such net inpatient care revenues during the period.

*Id.* A hospital eligible for a DSH adjustment under both the proxy and Pickle methods may receive an adjustment under the method producing the greater payment. 51 Fed. Reg. 31458 (1986).

Plaintiffs are hospitals that provide inpatient services to Medicare recipients and low-income patients. Plaintiffs claimed entitlement to DSH adjustments under the Pickle method for fiscal years 1989–1991. Compl. ¶¶ 15–16, at 5. After receiving input on these claims from the HCFA, a fiscal intermediary denied all of plaintiffs' claims for adjustments.

Pursuant to 42 U.S.C. § 1395oo(a), plaintiffs appealed those decisions to the Provider Reimbursement Review Board ("PRRB"), an administrative body created to mediate Medicare disputes. Before the PRRB hearing, the parties agreed on all but one element of the methodology for determining eligibility for a DSH adjustment under the Pickle method: the intermediary maintained that the net inpatient care revenues used for the denominator include net inpatient care revenues attributable to Medicare and Medicaid; plaintiffs maintained that the net inpatient care revenues in the denominator exclude those net inpatient care revenues attributable to Medicare and Medicaid.[3] These di-

---

1. Medicaid is a cooperative federal-state program that provides health care to eligible low-income individuals. 42 U.S.C. § 1396 *et seq.*

2. The "Pickle method" is named after the sponsor of this statutory provision, former Representative J.J. Pickle. It was created "[b]ecause of concern that this proxy measure of low-income status might substantially understate the presence of low-income patients in some hospitals, most particularly public hospitals in states where the Medicaid eligibility standards are stringent."

H.R.Rep. No. 99–241, at 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. 579, 596.

3. The numerator is that part of the Pickle method, quoted above, that reads "net inpatient care revenues (excluding any of such revenues attributable to [Medicare and Medicaid]), during the cost reporting period in which the discharges occur, for indigent care from State and local government sources." The denominator reads "total of such net inpatient care revenues during the period."

vergent constructions turn on whether the "such" in the denominator incorporates the Medicare and Medicaid exclusion from the numerator's parenthetical phrase. On September 13, 1995, the PRRB unanimously reversed the decision of the intermediary and granted plaintiffs' claims. *See* Administrative Record ("A.R.") at 57–72. Notably, the PRRB concluded that the plain meaning of the statute supported the exclusion of Medicare and Medicaid revenues from the denominator. *Id.* at 69.

On November 16, 1995, the HCFA Administrator reversed the PRRB's decision. *Id.* at 2–12. The Administrator concluded that the statute contained "incontrovertible referential ambiguity" and that the legislative history did not directly address the issues of the case. *Id.* at 11. The Administrator concluded that, in light of the asserted textual ambiguity, HCFA's original construction of the statute, which included Medicare and Medicaid revenues in the denominator, was "reasonable" and "neither arbitrary nor capricious from a policy standpoint." *Id.* at 12.

Plaintiffs filed this action under 42 U.S.C. § 1395oo(f)(1), seeking declaratory and monetary relief. In their motion for summary judgment, which seeks reversal of the Administrator's decision, plaintiffs claim that (1) the Pickle method requires the exclusion of Medicare and Medicaid revenues from the denominator, and (2) the Administrator's decision was contrary to the Medicare statute, arbitrary and capricious, and otherwise contrary to law under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* In their cross-motion for summary judgment, defendants contend that (1) Congress has clearly indicated that the denominator of the Pickle method includes Medicare and Medicaid revenues, and (2) even if Congress has not clearly indicated the inclusion of Medicare and Medicaid revenues, defendant's interpretation of the denominator should be upheld as reasonable. Upon consideration of the entire record, the Court grants plaintiffs' motion.

## STANDARD OF REVIEW

Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because the issues raised by these motions concern only questions of statutory interpretation, they are appropriate for resolution on a motion for summary judgment.

■ For guidance in resolving the pending motions, the Court looks to the framework for reviewing an agency's construction of a statute set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron,* a court must first ascertain "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." If, however, a court concludes that the statute is ambiguous or silent on the relevant question, it will defer to the agency's construction of the statute as long as it is "permissible." [4] *Id.* 467 U.S. at 843.

■ A court must employ "traditional tools of statutory construction" to determine whether Congress has addressed a particular issue. *Chevron,* 467 U.S. at 843 n. 9. Accordingly, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992); *accord Negonsott v. Samuels,* 507 U.S. 99, 104, 113 S.Ct. 1119,

---

4. Defendant argues that under *Chevron,* 467 U.S. at 865, her interpretation of the Medicare statute is due "special deference" because "the regulatory scheme is technical and complex." However, the passage that she quotes from *Chevron* forms part of the Supreme Court's analysis under the second prong, which applies only upon a finding

that Congressional intent is unclear. *Id.* at 842. Where, as here, the Court finds that the intent of Congress is clear, defendant's interpretation is not entitled to deference. *Id.* at 843 n. 9; *Fertilizer Inst. v. EPA,* 935 F.2d 1303, 1309 (D.C.Cir. 1991).

122 L.Ed.2d 457 (1993). Thus, plain language controls statutory construction, absent a "clearly expressed legislative intention to the contrary." *Qi–Zhuo v. Meissner,* 70 F.3d 136, 140 (D.C.Cir.1995) (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)).

## ANALYSIS

■ Plaintiffs prevail under the first prong of *Chevron* because a plain language analysis supports their construction of the Pickle denominator.[5] First, the words in the statute describing the denominator, when given their ordinary meaning, support plaintiffs' interpretation. Second, this interpretation succeeds in giving effect to every word describing the denominator. Last, there is no "clearly expressed legislative intent" which undermines this reading of the Pickle denominator.

As noted, the crux of the parties' disagreement turns on whether the reference to "such net inpatient care revenues" in the denominator incorporates the Medicare/Medicaid exclusion expressed in the numerator. Because "[c]ourts properly assume, absent sufficient indication to the contrary, that Congress intends words in its enactments to carry their ordinary, contemporary, common meaning," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (internal quotations omitted), the Court looks to the plain meaning of "such." This word denotes:

> Of that kind, having particular quality or character specified. Identical with, being the same as what has been mentioned. Alike, similar, of the like kind. "Such" represents the object as already particu-

larized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent.

*Black's Law Dictionary* 1432 (6th ed.1990). As applied to the Pickle method, because the "such" in the denominator immediately precedes "net inpatient care revenues," it must refer to the last antecedent of "net inpatient care revenues." This last antecedent is "net inpatient care revenues (excluding any of such revenues attributable to [Medicare] or [Medicaid])." 42 U.S.C. § 1395ww(d)(5)(F)(i)(II). The denominator must incorporate the parenthetical phrase excluding Medicare or Medicaid revenues because that phrase modifies "net inpatient care revenues."[6] In effect, the parenthetical phrase "particularize[s]" the "object." *Black's Law Dictionary* 1432 (6th ed.1990).

Furthermore, a construction of the Pickle denominator that incorporates the exclusion of Medicare and Medicaid revenues gives effect to all of the words in the denominator. *See Washington Hosp. Ctr. v. Bowen,* 795 F.2d 139, 145 (D.C.Cir.1986) (where possible, courts must construe statutes to give effect to every word Congress used). Under this construction, "such" refers to net inpatient care revenues as modified by the Medicare/Medicaid exclusion. Additionally, "total," which immediately precedes "such," refers to the whole of this amount.[7] In other words, "total" clarifies that the denominator includes all of the modified net inpatient care revenues, and not simply that portion attributable to "indigent care from State and local government sources."[8] Hence, it distinguishes the numerator from the denominator.[9]

---

5. Because the Court rules for plaintiffs pursuant to the first prong of *Chevron,* it need not address plaintiffs' APA challenge.

6. The antecedent does not include "for indigent care from State and local government sources" because that clause serves to distinguish the numerator from the denominator. *See infra* n.9 and accompanying text.

7. "Total" means "[w]hole, not divided, lacking no part, entire, full, complete, the whole amount. Utter, absolute." *Black's Law Dictionary* 1490 (6th ed.1990).

8. The Court disagrees with defendant's contention that this construction of the Pickle denominator renders the term "total" meaningless.

9. Accordingly, the Court disagrees with defendant's argument that an application of the "last antecedent" definition to "such" must also include the limitation "for indigent care from State or local government sources" in the denominator since this clause also modifies the original "net inpatient care revenues." The insertion of the term "total" clarifies that the phrase "for indigent care from State or local government sources" distinguishes the composition of the numerator from that of the denominator. More-

By contrast, defendant's construction of the statute fails to effectuate every word in the Pickle denominator. Defendant contends that "such net inpatient care revenues" in the denominator must refer to all net inpatient care revenues because the previous use of "such" in the parenthetical phrase referred to all net inpatient care revenues, including those attributable to Medicare and Medicaid.[10] Because "identical words used in different parts of the act are intended to have the same meaning," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1, "especially when . . . repeated within a given sentence," *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), defendant contends that the "such" in the denominator must parallel that in the parenthetical phrase. This argument, however, strains credulity because "such" is a "descriptive and relative" term, the meaning of which depends on the last antecedent. *Black's Law Dictionary* 1432. Thus, by definition, "such" cannot automatically acquire the same meaning as that of a prior use of the word. However, even assuming that this rule of statutory construction applies in this instance, defendant's interpretation still fails to effectuate the term "of such." Without that term, the denominator reads "total net inpatient care revenues." If added, the term "of such" becomes surplusage because the denominator already expresses the meaning defendant ascribes to "of such," namely, that the denominator includes all net inpatient care revenues. Because courts should seek to avoid treating statutory terms as surplusage, *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 506–507, 133 L.Ed.2d 472 (1995), defendant's construction cannot attach to the Pickle denominator.

▮ The plain language of the statute controls the interpretation of the statute, absent a "clearly expressed legislative intention contrary to that language, which would require [the Court] to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (internal quotation omitted); *accord Qi–Zhuo,* 70 F.3d at 140. The Court finds no such intention because the legislative history is unclear, and thus inconclusive.

Congress originally enacted the Pickle amendment as part of the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA"), Pub.L. No. 99–272, 100 Stat. 158 (1986). Shortly thereafter, Congress amended the Pickle denominator in the Omnibus Budget Reconciliation Act ("OBRA") of 1987, Pub.L. No. 100–203, 101 Stat. 1330–59 (1987), by inserting the words "net inpatient care" to clarify whether the revenues in the denominator referred to net or gross revenues.[11] The OBRA's legislative history includes two references to the formula for the Pickle denominator. The first reference is in a section of a House Conference report that describes the Pickle method before the 1987 amendment:

> Additional payments are made to PPS hospitals that serve a disproportionate share of low-income patients. Under one criterion, a hospital located in an urban area, which has 100 or more beds, may receive such payments if it can demonstrate that more than 30 percent of its inpatient care revenues (excluding any Medicare or Medicaid revenues) are provided by State and local government payments for indigent care.

over, as defendant concedes, Def.'s Mem. in Opp. to Pls.' Mot. and in Supp. of Cross-Mot. at 38, such a construction would lead to the absurd result of the numerator always being equal to the denominator, a result the Court readily presumes Congress did not intend. *See Hughey v. JMS Dev. Corp.,* 78 F.3d 1523, 1529 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 482, 136 L.Ed.2d 377 (1996); *In re Pacific–Atlantic Trading Co.,* 64 F.3d 1292, 1303 (9th Cir.1995).

**10.** In making this argument, defendant focuses on a sentence in the definition of "such" which

reads, "[i]dentical with, being the same as what has been mentioned." *Black's Law Dictionary* 1432. Defendant distorts the meaning of this sentence. "Identical with" refers to the previous use of the object that the term "such" modifies; it does not refer to the previous use of "such" *per se.* Thus, "such net inpatient care revenues" is "identical with" the net inpatient care revenues that "ha[ve] been mentioned"—those modified by the Medicare/Medicaid exclusion.

**11.** In the COBRA legislation, the denominator had read "total of such revenues."

H.R. Conf. Rep. No. 100–495, at 543 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1245, 2313–1289. The second reference describes the change made by the 1987 amendment, which

> [c]larifies that a hospital would qualify if more than 30 percent of its net inpatient care revenues (excluding any Medicare or Medicaid revenues) are provided by State and local government payments for indigent care.

*Id.* at 545, *reprinted in* 1987 U.S.C.C.A.N. at 2313–1291. Both passages support plaintiffs' construction of the Pickle denominator because the Medicare/Medicaid exclusion immediately follows the denominator. If the exclusion applied only to the numerator, the parenthetical modifier would have followed the term "[those revenues] provided by State and local government payments for indigent care." Thus, the OBRA legislative history validates the Court's plain language interpretation of the Pickle denominator.

Nevertheless, the earlier COBRA legislative history undermines this interpretation. In relevant part, the history consists of reports from Conference and House committees and reads:

> The Secretary would be required to make disproportionate share payments where a hospital can demonstrate that more than 30 percent of its net inpatient care revenues is provided by local or state governments for inpatient care for low income patients not otherwise reimbursed by Medicare or Medicaid.

H.R. Conf. Rep. No. 99–453, at 459 (1986).

> This exception process would require the Secretary to make disproportionate share payments . . . where the hospital can demonstrate that 30% or more of its net inpatient care revenue is provided directly or

indirectly by local or State governments for inpatient care not otherwise reimbursed by Medicaid.

H.R.Rep. No. 99–241, at 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. 579, 596. These passages contradict those in the OBRA legislative history insofar as the Medicare/Medicaid exclusion follows, and hence only modifies, the numerator.[12]

Because the passages from the OBRA and COBRA legislative histories conflict with one another, they form an inappropriate aid to the interpretation of the Pickle denominator. *See Qi–Zhuo,* 70 F.3d at 140 (inconsistent legislative history cannot override plain statutory language). Indeed, the "legislative history is more conflicting than the text is ambiguous." *Wong Yang Sung v. McGrath,* 339 U.S. 33, 49, 70 S.Ct. 445, 94 L.Ed. 616 (1950). Having determined that the plain language of the statute supports excluding Medicare and Medicaid revenues from the Pickle denominator, the Court should not and will not resort to legislative history to obscure an otherwise unambiguous statutory text. *See Ratzlaf v. United States,* 510 U.S. 135, 147–148, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

In reaching this conclusion, the Court rejects defendant's arguments that it should not consider the OBRA legislative history because that history does not represent the reflections of the Congress that originally enacted the Pickle amendment, and because the statutory changes enacted by Congress in the OBRA did not bear on the exclusion of Medicare/Medicaid revenues from the denominator. Although "the opinion of [a] later Congress as to the meaning of a law enacted . . . earlier does not control the issue" of statutory interpretation, *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 839–840, 108 S.Ct. 2182, 100

---

**12.** The House report also states:

> The Committee further intends that the denominator of this equation, net inpatient care revenue, be defined according to the generally accepted accounting principles in the hospital industry[ .]

H.R.Rep. No. 99–241, at 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 596. The Court concludes that this passage is ambiguous; although it suggests that the denominator is "net inpatient care revenue," the purpose of the sentence is to clarify the calculation of net inpatient care revenues. Thus, for ease of expression, the committee simply may have omitted a specific reference to the Medicare and Medicaid exclusion. As defendant herself notes, a committee's report is not drafted "meticulously." *See International Bhd. of Elec. Workers v. NLRB,* 814 F.2d 697, 712 (D.C.Cir. 1987); *Abourezk v. Reagan,* 785 F.2d 1043, 1054–1055 n. 11 (D.C.Cir.1986), *aff'd,* 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987).

**48**

L.Ed.2d 836 (1988), the Court will "by no means eschew the guidance" offered by "the understanding of a subsequent Congress as to the actions of an earlier one." *Heckler v. Turner,* 470 U.S. 184, 209, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985). Moreover, this later Congress did not idly comment on the formula for the Pickle denominator, but rather expressed its interpretation while enacting statutory changes.[13] Therefore, the Court properly may consider the OBRA legislative history. Having done so, it concludes that the legislative history of the Pickle amendment, as a whole (and as so often is true), provides an obscure and unreliable source of guidance on Congressional intent.[14]

## CONCLUSION

In sum, the plain meaning of the Pickle denominator indicates that Congress has directly and clearly addressed the issue of excluding Medicare and Medicaid revenues therefrom. Because the Pickle amendment's legislative history is conflicting and unclear, it does not belie this conclusion by rendering the statute "ambiguous" under *Chevron*'s first prong. Thus, the Court concludes that the Pickle denominator excludes those net inpatient care revenues attributable to Medicare and Medicaid. Accordingly, the Court grants plaintiffs' motion for summary judgment and denies defendant's cross-motion for summary judgment.[15] An appropriate Judgment accompanies this Opinion.

## *JUDGMENT*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that plaintiffs' motion for summary judgment is granted. It hereby further is

ORDERED, that defendant's motion for summary judgment is denied. It hereby further is

ORDERED, that the net inpatient care revenues used in the denominator of the formula to determine a Medicare adjustment under the Pickle amendment, 42 U.S.C. § 1395ww(d)(5)(F)(i)(II), are declared to exclude net inpatient care revenues attributable to Medicare and Medicaid. It hereby further is

ORDERED, that the HCFA Administrator's decision of November 16, 1995, is reversed. It hereby further is

ORDERED, that defendant shall pay plaintiffs the amounts in controversy, plus interest in accordance with 42 U.S.C. § 1395oo(f)(2). It hereby further is

ORDERED, that if plaintiffs still seek reimbursement for attorneys' fees and other costs, the parties shall file a joint briefing schedule within 14 days of the date of this Order.

SO ORDERED.

13. Even though these changes did not necessarily pertain to the Medicare/Medicaid exclusion, they still indicate that Congress devoted a greater degree of attention to the issue than if it had not made any changes to the statute.

14. Even if the Court considered only the CO-BRA's legislative history, however, it would still conclude that the legislative history is inconclusive. Defendant principally relies on three passages from committee reports. As already noted, one of these passages is ambiguous. *See supra* n. 12. Moreover, defendant's argument against according too much weight to the OBRA's legislative history, because committee reports are not

drafted "meticulously," applies with equal force to the COBRA's history. Finally, and tellingly, in reversing the decision of the PRRB in favor of defendant, the HCFA Administrator found that the COBRA's history did not provide "direct support" for defendant's statutory interpretation. A.R. at 11.

15. In their complaint, plaintiffs suggest that they may seek reimbursement for attorneys' fees and other costs associated with this action. If plaintiffs still seek any such relief, the parties should file a joint briefing schedule with the Court within 14 days of the date of this Opinion.