Gee–Kwong **CHAN, et al., Plaintiffs,**

v.

Janet **RENO, et al., Defendants.**

No. C–95–1650 SI.

United States District Court, N.D. California.

March 6, 1996.

Eugene C. Wong, Robert G. Ryan, Valencia & Wong Law Offices, San Francisco, CA, for Gee–Kwong Chan, Ying Xu Feng, Geng Quan Shan.

Ethan B. Kanter, U.S. Department of Justice, Washington, DC, Frank W. Hunger, Asst. Atty. Gen., U.S. Dept. of Justice, Torts, Civil Division, San Francisco, CA, Michael J. Yamaguchi, U.S. Atty., Robert Yeargin, U.S. Attorney's Office, San Francisco, CA, Donald E. Keener, Department of Justice, Immigration Litigation, Washington, DC, for Janet Reno, Thomas J. Schiltgen, Joseph L. Thomas, Doris Meissner, Immigration and Naturalization Service, the Executive Office for Immigration Review, Warren Christopher, United States Department of State.

## ORDER OF DISMISSAL

ILLSTON, District Judge.

On February 2, 1996, the Court heard argument on defendants'[1] motion to dismiss and plaintiffs' motion for class certification and summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendants' motion to dismiss and, accordingly, does not reach plaintiffs' motions.

## BACKGROUND

Plaintiffs and proposed class members (collectively "plaintiffs") are Chinese nationals who entered the United States on or before April 11, 1990, without being "inspected and admitted or paroled" by the Immigration and Naturalization Service (INS). Plaintiffs were protected from enforced departure from the United States until January 1, 1994 by an executive order issued in April 1990 by President Bush following the June 4, 1989 Tiananmen Square massacre.[2] In 1992, Congress enacted the Chinese Student Protection Act ("CSPA"), codified at 8 U.S.C.A. § 1255[3], which established a process for certain Chinese nationals to adjust their immigration status. Under the CSPA, Chinese nationals who had been inspected and admitted or paroled into the United States could file applications with the INS between July 1, 1993 and June 30, 1994 to have their immigration status adjusted to that of "permanent resident alien."

Plaintiffs filed timely and proper applications for adjustment of status under CSPA. The INS denied plaintiffs' applications because the plaintiffs had entered the United States without being inspected and admitted or paroled.[4] Plaintiff Chan filed a motion for reconsideration of the denial of his CSPA application, arguing that the INS failed to properly apply section 1255(i) of Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i) (hereinafter "section 245(i)"), which took effect on October 1, 1994. Under section 245(i), aliens who entered the United States without inspection by the INS are eligible for adjustment of status if they satisfy certain statutory requirements, including eligibility for an immediate visa.

Specifically, plaintiffs challenge the INS's interpretation of section 245(i) in the INS's adjudication of plaintiffs' CSPA applications. The INS denied plaintiffs' CSPA applications on the grounds that plaintiffs were still required to meet the requirements of 8 C.F.R. § 245.9(b)(6), namely, that they were "inspected and admitted or paroled" upon entry into the United States despite the provision of section 245(i). Plaintiffs acknowledge that federal courts have sustained the INS's promulgation and interpretation of 8 C.F.R. § 245.9(b)(6) several times: *Lin v. Meissner,* 855 F.Supp. 4 (D.D.C.1994), *affirmed,* 70 F.3d 136 (D.C.Cir.1995); *Pan v. Reno,* 879 F.Supp. 18 (S.D.N.Y.1995), *appeal withdrawn,* Dkt. No. 95–6087 (2nd Cir., Aug. 7, 1995); *Tang v. Reno,* Case No. C–94–3134–VRW (N.D.Cal. Feb. 13, 1995), *appeal pending,* Dkt. No. 95–15421 (9th Cir., March 10, 1995).

Nevertheless, plaintiffs contend that defendants have violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C); the CSPA; section 245(i); 8 C.F.R. § 245.10(d); and the equal protection and the due process clauses of the Fifth Amendment. Plaintiffs allege that defendants acted unlawfully in the following specific manners:

1) Defendants, in adjudicating plaintiff Chan's motion to reconsider his CSPA application that had been denied on

---

1. Named as defendants in this matter are Attorney General Janet Reno, Immigration and Nationalization Service ("INS") District Director Thomas Schiltgen, Director of the INS Western Service Center Joseph Thomas, INS Commissioner Doris Meissner, the INS, The Executive Office for Immigration Review, Secretary of State Warren Christopher and the United States Department of State.

2. Executive Order 12711, 55 FR 13897 (Apr. 13, 1990).

3. *See* 1995 Cumulative Annual Pocket Part at 118–20.

4. The requirement of that an applicant have been "inspected and admitted or paroled" upon entry of the United States is not stated explicitly in the CSPA. However, 8 C.F.R. § 245.9(b)(6) imposes this requirement on CSPA applicants.

February 2, 1995, interpreted INA § 245(i) to mean that it does not "supersede all other adjustment of status categories previously existing before its enactment ..." Pl.s'.J. Memo at 4 (citations omitted). Plaintiff Chan argues that he was eligible for an adjustment of his status because favorable changes in immigration law are to be applied to pending immigration matter, such as his application for reconsideration.

2) Defendants failed to notify plaintiffs of the opportunity under INA § 245(i) and 8 C.F.R. § 245.10(d) to amend their CSPA applications that were pending on or after October 1, 1994 by submitting INS Form I-485 Supplement A and the required fee.

3) Defendants unlawfully promulgated 8 C.F.R. § 245.10(e) which operated to deny plaintiffs' CSPA applications under INA § 245(i). Pl.s'.J. Memo. at 4–6.

## DISCUSSION

Plaintiffs concede the validity of the requirement that they must have been "inspected and admitted or paroled" into the United States in order to obtain a change in status under the CSPA, and admit that they have not met this requirement. However, they argue that a favorable change occurred in the INA which would allow them to change their status despite not having been inspected and admitted or paroled. Plaintiffs argue that section 245(i), enacted on October 1, 1994, allows an applicant who had not been inspected and admitted or paroled to apply for a change in his or her immigration status.

Section 245(i) [5] states, in relevant part:

(1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States who—

(A) entered the United States without inspection; or

(B) is within one of the classes enumerated in subsection (c) of this section,

may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence. The Attorney General may accept such application only if the alien remits with such application a sum equalling five times the fee required for the processing of applications under this section as of the date of receipt of the application, but such sum shall not be required from a child under the age of seventeen ...

(2) Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if—

(A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and

(B) an immigrant visa is immediately available to the alien at the time the application is filed.

The effective and termination dates of section 245(i) are set forth separately in 8 U.S.C. § 1182 under the "Historical and Statutory Notes" and are referred to as "section 506(c)":

The provisions of these amendments to the Immigration and Nationality Act ... shall take effect on October 1, 1994 and shall cease to have effect on October 1, 1997. *See* 1995 pocket part at 216.

Based on these code sections, plaintiffs make the following argument:

The CSPA sets forth the following relevant application conditions for a change of immigration status: applications had to be filed between July 1, 1993 and June 30, 1994; the applicant had to be inspected and admitted or paroled into the United States; and the applicant had to be a national of the People's Republic of China, had to reside continuously in the United States since April 11, 1990, and could not have been physically present in the People's Republic of China for more than ninety days between April 11, 1990 and October 2, 1992. If the applicant met these conditions, the application was to be considered

---

**5.** There are two sections enumerated as "8 U.S.C. § 1255(i)." This appears to be a drafting error in the statute. *See* 1995 pocket part at 115 and 116.

"without regard to whether an immigrant visa number [was] immediately available." 8 U.S.C. § 1255(a)(2). Thus, plaintiffs argue, they were eligible for a changes of status under CSPA *except* for the fact that they had not been inspected and admitted or paroled upon entry into the United States.[6]

Under section 245(i), aliens who entered without inspection could apply for a change of immigration status by filing an application and paying a special filing fee, provided that they had an immigrant visa number "immediately available at the time the application [was] filed." 8 U.S.C. § 1255(i).

Plaintiff argues that if some of the provisions of the CSPA are combined with some of the provisions of section 245(i), plaintiffs met all the requirements for a change of status and their applications (or motions for reconsideration) for change of status should be considered by the INS.

Plaintiffs argue that section 245(i) represents a beneficial change in law and must be applied to immigration applications that are pending before the INS.[7] Plaintiffs cite several cases for the proposition that favorable changes in law should be applied to matters pending before the INS.[8] Defendants do not dispute this assertion.

Plaintiffs further argue that two INS regulations were improperly promulgated and/or enforced. 8 C.F.R. § 245.10(d) states:

An adjustment of status applicant will be allowed the opportunity to amend an adjustment application filed on or after October 1, 1994, to request consideration under the provisions of section 245(i) of the Act, if it appears that the alien is not otherwise ineligible for adjustment of status. The applicant will be notified in writing of the intent to deny the adjustment of status application unless Supplement A to Form I–485 and any required additional sum is filed within thirty days of the date of the notice.

Plaintiffs argue that the INS failed to follow this regulation, which it promulgated itself, by failing to notify plaintiffs "of the opportunity to amend their adjustment applications under 8 C.F.R. section 245.10(e)." Pl.s'. J. Memo. at 16.

Second, 8 C.F.R. § 245.10(e) states:

The provisions of section 245(i) of the Act shall not apply to an application for adjustment of status that was filed before October 1, 1994. The provisions of section 245(i) of the Act shall also not apply to a motion to reopen or reconsider an application for adjustment of status if the application for adjustment of status was filed before October 1, 1994.

Plaintiffs argue that this regulation is contrary to the plain language of the statute and therefore is an abuse of discretion.

## A. Section 245(i) [9]

Section 245(i) does not directly apply to plaintiffs' change of status applications under CSPA. The Court—and defendants—agree with plaintiff that a favorable change in law should be applied to a pending proceeding before the INS. However, this prin-

---

6. The exception swallows the argument: because plaintiffs admit that they were not "inspected and admitted or paroled" upon entry of the United States, under 8 C.F.R. § 245.9(b)(6) they were *not* deemed to have an immediate visa number available.

7. For the purpose of the motions before the Court, the Court will assume that each plaintiff has an application or a motion for reconsideration pending before the INS.

8. *See* Pl.s'. J. Memo. at 11–15, citing *Fassilis v. Esperdy*, 301 F.2d 429 (2nd Cir.1962); *Ziffrin Inc. v. United States*, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621 (1943); *Andrijic v. INS*, 352 F.2d 512 (9th Cir.1965); *Talanoa v. INS*, 397 F.2d 196

(9th Cir.1968); and *Matter of Alarcon*, Int.Dec. # 3184 (BIA1992) (slip. op.).

9. As an initial matter, defendants argue that this case is premature under the exhaustion doctrine. Defendants argue that plaintiffs have not filed applications under section 245(i) and thus have not exhausted their administrative remedies. This argument is unpersuasive because the relief sought by plaintiffs is to have their CSPA applications considered—not to have an application under section 245(i) considered. Plaintiffs have submitted evidence that the INS refused to process their CSPA applications and, hence, have shown that any further efforts to obtain the relief sought administratively would be futile. *See, e.g., White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir.1988). Accordingly, the exhaustion doctrine does not bar this action.

ciple does not override basic principles of statutory construction, including: 1) the words in a statute are to be read in their plain and ordinary meanings, and 2) when two statutes are capable of co-existing, they should be read so as to give each full effect. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 265–66, 112 S.Ct. 683, 691–92, 116 L.Ed.2d 687 (1992).

First, simply reading section 245(i) and applying the plain and ordinary meaning of the text shows that section 245(i) does not apply to applications made under the CSPA. The provisions of section 245(i) took effect on October 1, 1994 and cease to have effect on October 1, 1997. Section 245(i) authorizes the Attorney General to accept applications for adjustment of status. There is nothing in the statute that indicates that an application filed prior to the enactment of the statute should be processed under the terms of section 245(i). In fact, section 245(i) indicates that an individual must file an application and a special application fee to be considered under section 245(i):

> [t]he Attorney General may accept such application only if the alien remits with such application a sum equalling five times the fee required for the processing of applications under this section as of the date of receipt of the application . . .

This language is entirely prospective and specific to section 245(i) itself. There is nothing indicating that this section should be applied to applications filed under other code sections or to applications filed before October 1, 1994. In addition, the only way to make sense of the special application fee provision is to understand section 245(i) to mean that, as of October 1, 1994, an alien may apply for a change of status under this section by filing an application and by paying a special fee.

In addition, section 245(i)(2) states "[u]pon receipt of such an application and the sum hereby required . . ." Again, this language is prospective. It does not refer to applications already filed or under consideration. Furthermore, the reference to payment of a fee shows that section 245(i) applies only to applications filed pursuant to it. The fee provision of section 245(i) would make no sense if the statute were to apply to applications already filed.

Second, the CSPA and section 245(i) provide two separate and self-contained methods for aliens to change their immigration status. In *County of Yakima*, the Supreme Court wrote:

> Judges are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. 502 U.S. at 265–66, 112 S.Ct. at 692 (internal quotation marks and citations omitted).

Plaintiffs ask the Court to do exactly what the Supreme Court instructed against: plaintiffs ask the Court to chose certain portions of the CSPA and certain portions of section 245(i), and to meld them together into a single avenue of relief for plaintiffs.

The CSPA and section 245(i) each provides a complete avenue for changes in immigration status. Each has specific, limited, and non-overlapping application periods and specific criteria that are unique and not fully compatible with each other. For example, the CSPA essentially waives the requirement that a visa number be available for an applicant but it does not waive the requirement that an applicant have been "inspected and admitted or paroled." Section 245(i) is virtually the opposite: it, in essence, waives the "inspection" requirement but does not waive the requirement that a visa number be available for the applicant. Plaintiffs' proposed reading would require the Court to ignore portions of each statute. This would violate one of the most fundamental rules of statutory construction: give effect to every provision of the statute. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955).

Where the intent of Congress "has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 507 U.S. 99,

104, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993) (quotation marks and citations omitted). Here, the intent of Congress was clear: section 245(i) creates a separate means of applying for a change in status, and is complete on its face. The INS's regulations implementing section 245(i) are consistent with that meaning and therefore are valid. Neither the section nor the regulations affect the disposition of an application made under the CSPA, even if that application was pending after October 1, 1994.

■ Even if section 245(i) were ambiguous, the INS's interpretation as expressed in 8 C.F.R. § 245.10(d) and (e) are reasonable and, therefore, will not be disturbed. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984). The INS's interpretation that section 245(i) applies only to applications filed on or after October 1, 1994 and only to applications filed under section 245(i) is reasonable based on: 1) the explicit limitation of the effective time period of the status, 2) the language of the statute referring to a special fee requirement, and 3) the language of the statute referring to other subsections of the statute [10] while not specifically invoking the CSPA.

### B. Equal Protection

■ Plaintiffs' equal protection argument is fundamentally flawed because plaintiffs do not identify a class of similarly-situated persons who are being treated more favorably. Plaintiffs allege that they are being treated differently from other aliens who have visas immediately available. This assertion is incorrect because plaintiffs do not have visas immediately available.

Under the CSPA, certain Chinese nationals were deemed to have visas available. However, CSPA applies only to Chinese nationals who were "inspected and admitted or paroled" upon entry into the United States. Because these plaintiffs admit that they were not inspected, they do not have visas available under the CSPA. Because they do not

have visas available, they are not similarly situated to aliens who do have visas available and their equal protection claim fails.

### C. Due Process

■ Plaintiffs' due process claim is also flawed. Plaintiffs assert that they were denied due process because the INS failed to inform them of an opportunity to amend their applications for change of status under section 245(i) and thus they were deprived of their liberty interest in the benefits conferred by section 245(i). This argument fails because plaintiffs are not eligible to take advantage of section 245(i), as was explained above. Therefore, the failure to notify them does not constitute a violation of due process. In fact, there was no "failure to notify" plaintiffs because notice was to be provided only to those persons eligible under section 245(i).

### D. Retroactivity

Plaintiffs dedicate a large portion of their reply brief to an argument on how to determine if a statute applies retroactively. However, the real issue in the present case in the *scope* of section 245(i), not its retroactivity. Whether or not it is retroactive, section 245(i) does not apply to application filed under the CSPA because section 245(i) and the CSPA provide for two separate and complete avenues of relief.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1) Defendants' motion to dismiss is GRANTED without leave to amend; and

2) The Clerk of the Court shall close the file.

IT IS SO ORDERED.

---

**10.** The first sentence of section 245(i) states "[n]otwithstanding the provisions of subsections

(a) and (c) of this section ..."